**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Janice A. BRIMBERRY, Defendant–Appellant.**

**No. 90–3754.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1991.

Decided April 17, 1992.

Norman R. Smith, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Crim. Div., Fairview Heights, Ill., for plaintiff-appellee.

Spiros P. Cocoves (argued), Toledo, Ohio, for defendant-appellant.

Before CUDAHY and MANION, Circuit Judges,. and REYNOLDS, Senior District Judge.[*]

MANION, Circuit Judge.

Defendant-appellant Janice A. Brimberry was convicted of making and subscribing a false Internal Revenue Service Collection Information Statement in violation of 26 U.S.C. § 7206(1) and attempted evasion of payment of income taxes in violation of 26 U.S.C. § 7201. The district court sentenced Brimberry under the Sentencing Guidelines to 33 months imprisonment and two years supervised release for each violation, to run concurrently. Brimberry appeals both her conviction and sentence. For the reasons set forth below, we affirm.

### I. Background

This appeal is yet another chapter in the story of Stix & Company, Inc., the object of a massive embezzlement scheme that has generated a glut of litigation in Illinois and Missouri. *See, e.g., United States v. Massa*, 854 F.2d 315 (8th Cir.), *cert. denied*, 488 U.S. 973, 109 S.Ct. 508, 102 L.Ed.2d 543 (1988); *United States v. Massa*, 804 F.2d 1020 (8th Cir.1986); *United States v. Brimberry*, 803 F.2d 908 (7th Cir.1986), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1977, 95 L.Ed.2d 817 (1987); *United States v. Brimberry*, 779 F.2d 1339 (8th Cir.1985); *United States v. Bednar*, 776 F.2d 236 (8th Cir.1985); *United States v. Brimberry*, 744 F.2d 580 (7th Cir.1984); *United States v. Massa*, 740 F.2d 629 (8th Cir.1984), *cert. denied*, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *United States v. Bednar*, 728 F.2d 1043 (8th Cir.), *cert. denied*, 469 U.S. 827, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984). Stix & Company was a St. Louis, Missouri, broker-dealer firm engaged in the

[*] Hon. John W. Reynolds, Senior District Judge for the Western District of Wisconsin, is sitting by designation.

business of selling securities. In the late 70's, Thomas Brimberry, a senior vice-president and majority shareholder of Stix and, at the time, Janice Brimberry's husband, siphoned millions of dollars from the firm by manipulating margin accounts. Thomas, with the help of other Stix employees, would make false computer entries showing the receipt of nonexistent, fully-paid securities into the accounts. Once he created an appearance of equity in the accounts, Thomas would siphon money by authorizing checks to be drawn from these accounts. Although the government granted Thomas immunity from prosecution for his role in this scheme, he did go to jail for bankruptcy fraud, perjury and obstruction of justice. *See United States v. Brimberry*, 803 F.2d 908 (7th Cir.1986), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1977, 95 L.Ed.2d 817 (1987); *United States v. Brimberry*, 779 F.2d 1339 (8th Cir.1985); *United States v. Brimberry*, 744 F.2d 580 (7th Cir.1984).

Janice Brimberry was not merely an innocent bystander in the Stix swindle. At the trials of the co-conspirators, Janice admitted purchasing blank stock certificates and having the names of real securities (matching the false computer entries) printed on them. The false securities were placed in the vault at Stix as a means to avoid detection by Stix's auditors. Janice also falsified records, knowingly signed false income tax returns and destroyed evidence. Janice was indicted for her role in the Stix swindle but was granted immunity in exchange for her testimony.

The Stix swindle also generated some civil litigation. The trustee in bankruptcy for Stix brought a civil suit against Janice to recover the diverted funds. On June 26, 1984, the United States District Court for the Eastern District of Missouri entered a judgment against Janice in favor of Stix for $23,764,288.67. The Missouri district court also ordered Janice to turn over all assets in her custody which were purchased with funds diverted from Stix.

The Brimberrys got into trouble with the IRS because they failed to declare the millions of dollars they diverted from Stix on their joint income tax return. For the taxable years 1975 through 1981, deficiencies in income taxes of over $7 million were assessed against the Brimberrys. With penalties and interest, the Brimberry's total tax liability was over $19 million.

In October 1987, the IRS began an enforcement action against Janice Brimberry to collect the tax deficiency. On November 12, 1987, Janice and her accountant, Nathan Stein, met with an IRS officer, and Janice provided information regarding her assets and liabilities for IRS Form 433A, Collection Information Statement for Individuals, and for IRS Form 433B, Collection Information Statement for Businesses. The forms asked for information on all assets from which the tax deficiency could be paid. Janice represented that she was living with her mother, she depended on her mother for necessary living expenses, she owned no real property, and had no property that could be used to collect the tax. Janice signed the forms under penalties of perjury.

In February 1988, the IRS learned through a confidential informant that Janice Brimberry was trying to sell a four carat, heart-shaped diamond for $20,000 to $25,000. The IRS opened a criminal investigation of Janice and set up a sting operation. The confidential informant agreed to introduce Janice to an IRS undercover agent who would pose as a potential buyer of the jewelry. After a series of monitored telephone calls and meetings between Janice and the confidential informant, the informant agreed to arrange for a buyer of the jewelry to meet with Janice on March 4, 1988. On March 4, 1988, at the Collinsville, Illinois Hilton, in front of a rolling video camera, Janice sold the heart-shaped diamond and another, two carat diamond to the undercover IRS agent for $36,000. The IRS agent gave Janice $35,000 cash and arranged to deliver the remaining $1,000 at a later time.

IRS agents detained Janice as she was leaving the hotel room and seized the two diamonds and the $35,000. They also seized a diamond cocktail ring and a woman's 18 carat gold Rolex Presidential watch

which Janice was wearing. The agents asked Janice whether she had any additional jewelry. She initially said no; but, after being informed that the IRS would seek a search warrant, Janice admitted that she had additional jewelry hidden behind a television in the basement of her home. Additional jewelry was seized during a later consensual search of Janice's home. The total value of the jewelry seized from Janice was over $69,000. Janice admitted that she had the jewelry in November, 1987 when she signed the Collection Information Statements.

Further investigation also revealed that she had purchased a house in July of 1987 for $42,000. The loan for the house was in the name of Sandra Harper, Janice's friend; but Janice provided the $7,000 for the down payment and $1,400 in closing costs from her son's trust account. Janice then "leased" the house from Sandra Harper for $441 a month, the amount of the mortgage payment. Janice paid the mortgage company directly, paid all the property taxes and insurance premiums, and received $250 a month rental income from an apartment on the property. Sandra Harper testified that no money for the house came out of her pocket and that Janice would receive all profits if the house was sold.

On December 22, 1988, a two-count indictment was filed against Janice Brimberry. Count 1 charged Janice with willfully and knowingly making and subscribing a false IRS collection information statement, in violation of 26 U.S.C. § 7206(1), by failing to reveal assets. Count 2 charged Janice with attempted evasion of payment of $19 million in income taxes, penalties and interest previously assessed against her for the years 1975 through 1981 in violation of 26 U.S.C. § 7201. On September 12, 1990, after a six-day trial, a jury found Janice guilty on both counts. The district court, pursuant to the Sentencing Guidelines, sentenced Janice to 33 months imprisonment and two years supervised release on each count, to run concurrently. Janice appeals both her conviction and sentence.

## II. Analysis

### A. Waiver of Right to Testify

Janice Brimberry did not testify at trial, and she never asserted her right to testify in the district court. On appeal, Janice argues that the district court had an affirmative duty to determine whether her decision to remain silent was knowing and intelligent. Janice does not allege that she did not know she could testify, that she wanted to testify, or that her attorney prevented her from testifying. The record shows that this was not the case.[1] Rather, she simply contends that it was reversible error for the district court not to hold a *sua sponte* hearing to determine if her waiver was knowing and intelligent.

Janice's argument has already been rejected by this court. *See United States v. Thompson,* 944 F.2d 1331, 1345 (7th Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992); *United States v. Campione,* 942 F.2d 429, 438–39 (7th Cir.1991); *Ortega v. O'Leary,* 843 F.2d 258, 261 (7th Cir.), *cert. denied,* 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988). Like Janice, the defendant in *Thompson*

1. On the last day of trial, during proceedings out of the presence of the jury, Janice's attorney advised the district court that Janice, after being told twice of the negative consequences of not testifying, had decided not to take the stand. Janice's attorney seemed rather perplexed by this decision which basically gutted her defense strategy:

Ms. Schooley: Your Honor, I thought I should advise the Court of this. I told the Court that I would be able to tie up the testimony concerning the knowledge of the IRS in 1981 and '82 concerning jewelry. I had planned on doing that through Janice Brimberry to say that she had advised her accountant of that. She advised me Sunday that she had decided not to testify and we discussed it and I explained to her that I would not be able to, you know, that I felt the Court would probably order that stricken from the record and I would not be able to argue that and that it would have a bearing on the outcome of her case and on her own defense strategy. We discussed it again Monday, September 10th, and I went over everything again and she still is sticking by not wanting to take the stand. I just wanted to advise the Court of that.

Janice did not contradict her attorney's representations to the district court and made no request to testify.

did not testify or attempt to testify at trial; but, on appeal, he claimed that the district court should have affirmatively inquired about his decision not to take the stand. *Thompson*, 944 F.2d at 1345. The court rejected this argument holding that "courts have no affirmative duty to determine whether a defendant's silence is the result of a knowing and voluntary decision not to testify." *Id.* The other circuit courts reaching this question agree. *See United States v. McMeans*, 927 F.2d 162, 163 (4th Cir.1991); *United States v. Martinez*, 883 F.2d 750, 760 (9th Cir.1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991); *United States v. Systems Architects, Inc.*, 757 F.2d 373, 375–76 (1st Cir.), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 115 (1985); *United States v. Janoe*, 720 F.2d 1156, 1161 (10th Cir.1983), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984).

*B. Jury Instruction*

█ Janice next challenges the district court's refusal to instruct the jury on her defense that she did not report her assets to the IRS in good faith reliance on the advice of her accountant.[2] A defendant in a criminal case is entitled to an instruction on her theory of defense if: the defendant proposes a correct statement of law; the theory of defense has some foundation in the evidence; the defendant's theory is not otherwise part of the charge; and the failure to include an instruction on the defendant's theory would deny the defendant a fair trial. *United States v. Douglas*, 818 F.2d 1317, 1320–21 (7th Cir.1987). The government concedes that Janice's proposed instruction on the "good faith reliance on accountant's advice" defense is a correct statement of law. *See United States v. Whyte*, 699 F.2d 375, 379–80 (7th Cir.1983); *see also United States v. Benson*, 941 F.2d 598, 613–15 (7th Cir.1991) (good faith reliance on counsel's advise defense); *United States v. Kelley*, 864 F.2d 569, 572–73 (7th Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 23 (1989) (same). The district court determined, however, and we agree, that Janice was not entitled to the instruction because there is no evidence to support the defense.

According to Janice's own instruction, the "good faith reliance" defense is only available if Janice completely disclosed all material facts to her accountant, the accountant gave her advice, and she acted in good faith reliance on that advice. *See also Whyte*, 699 F.2d at 380 ("The essential elements of the reliance defense are: 1) full disclosure of all pertinent facts; and 2) good faith reliance on the accountant's advice."). The evidence at trial showed only that Janice's accountant, Nathan Stein, had some knowledge of Janice's jewelry and that Janice had worn her jewelry while at Stein's office. Since Stein is an accountant, a jury could reasonably infer that he knew that jewelry is an asset. Yet, Stein told an employee that Janice had no assets and remained silent when the IRS agent asked Janice if she had anything else of value that could be used to pay the tax deficiency.

This is the only evidence about Janice's relationship with Nathan Stein. Janice argues that this is enough to entitle her to the instruction. It is not. This evidence shows only that Stein knew about some of Janice's jewelry. It does not demonstrate (nor raise a permissible inference) that Jan-

---

**2.** The district court refused to give Defendant's Proposed Jury Instruction No. 5 which reads as follows:

The defendant claims that she is not guilty of willful wrong-doing because she acted on the basis of advice from her accountant.

If the defendant before taking any action sought the advice of her accountant whom she considered competent, in good faith and for the purpose of securing advice on the lawfulness of her possible future conduct, and made a full and accurate report to her accountant of all material facts of which she had the means of knowledge, and acted strictly in accordance with the advice of her accountant given following his full report, then the defendant would not be willfully doing wrong in doing something the law forbids, as that term is used in these instructions.

Whether the defendant acted in good faith for the purpose of seeking guidance as to questions about which she was in doubt, and whether she acted strictly in accordance with the advice received, are questions for you to determine.

ice told Stein about all of her jewelry or about the house which she had purchased. Thus, there is no evidence of complete disclosure to Stein. Further, there is no evidence, direct or circumstantial, that Stein advised Janice not to reveal the jewelry and the house; there is no evidence that Janice acted in good faith reliance on such advice. As the district court noted, it would require a leap not warranted by the evidence to conclude that there was even "some" evidence to support the instruction.

■ In addition, Janice was not entitled to her instruction on good faith reliance because this theory of defense was already part of the charge. Willfulness is an essential element of both subscribing a false collection information statement, see 26 U.S.C. § 7206(1), and attempted income tax evasion, see 26 U.S.C. § 7201. Janice's "good faith reliance" defense is "essentially a claim that [she] did not act willfully." Benson, 941 F.2d at 613. The district court's instructions required the jury to find that Janice had acted "willfully" and correctly defined willfully as acting "voluntarily and intentionally, with the specific intent" to violate a known legal duty.[3] Thus, the district court's instructions on willfulness "necessarily encompassed" Janice's theory of good faith reliance on accountant's advice. Kelley, 864 F.2d at 573; see also Benson, 941 F.2d at 614.

## C. Sufficiency of the Evidence

■ Janice's third argument on appeal is a very weak one-page challenge to the sufficiency of the evidence. Janice claims that the evidence presented at trial suggesting she openly wore her jewelry precludes a finding of willfulness. If Janice was trying to hide her jewelry, why did she wear it? The jury answered that question, and we will uphold the jury's verdict if, viewing the evidence in the light most favorable to

the government, any rational trier of fact could have found willfulness beyond a reasonable doubt. United States v. Kelley, 864 F.2d 569, 575 (7th Cir.), cert. denied, 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 23 (1989).

The record in this case is replete with evidence of Janice's willfulness. On the collection information statements, which she signed under penalties of perjury, Janice stated that she owned no real property; in fact, she had recently purchased a new home. She also failed to reveal over $69,-000 worth of jewelry. It is true that the IRS agent that interviewed Janice did not specifically ask her about jewelry; he did, however, ask whether Janice had any other assets that could be used to pay the tax. Although Janice knew she owned a substantial amount of jewelry, she answered, no.

Further, Janice's actions clearly indicate that she was attempting to hide her ownership of the house and the jewelry. She directed Sandra Harper to get the loan for the house, but Janice paid the down payment and closing costs. Then, Janice "leased" the house from Harper; the monthly "rent" was the same as the mortgage payment, and Janice made that payment directly to the mortgage company. This transaction was obviously a sham designed to hide the fact that Janice was purchasing a house. Janice kept her jewelry hidden behind a television in the basement of her home; she attempted to sell two pieces of the jewelry, for $35,000 cash, to a person she had never met before. The video tape of this transaction reveals that it was a very surreptitious operation. She even acknowledged the huge obligations she was trying to avoid when she told the undercover purchaser, "Oh, no joke, I owe 'em 23 million." The mere fact that Janice sometimes wore her jewelry in public cannot overcome this pile of evidence

---

**3.** More specifically, the jury instruction on subscribing a false information collection statement defined "willfully" as acting "voluntarily and intentionally, with the specific intent to make a statement that the defendant knew was false, when it was the legal duty of the defendant to answer truthfully and the defendant knew it was her legal duty to answer truthfully."

The jury instruction on attempted income tax evasion defined "willfully" as acting "voluntarily and intentionally, with the specific intent to keep from paying a tax imposed by the income tax laws which it was the legal duty of the defendant to pay to the government, and which the defendant knew it was her legal duty to pay."

and certainly says nothing about Janice's failure to disclose her ownership of a house. A rational trier of fact could conclude that Janice willfully lied on the collection information statement and willfully attempted to evade paying income taxes.

*D. The Sentence*

 Janice's final argument on appeal is that the district court incorrectly calculated her offense level under the Sentencing Guidelines. Section 2T1.3 of the Sentencing Guidelines governs the offense level for lying on the information statement, and section 2T1.1 governs the offense level for attempted tax evasion. Under both sections, the offense level is determined by the amount of "tax loss". The district court found that the "tax loss" was $7 million, the amount of the previously assessed income tax deficiency for the years 1975 through 1981. Janice argues that the "tax loss" should be the value of the hidden assets (according to Janice, $77,000)—the amount of money the IRS could actually recover from her. This issue is a question of law which we review *de novo*. 18 U.S.C. § 3742(e); *United States v. Teta*, 918 F.2d 1329, 1332 (7th Cir.1990) ("the interpretation of a term of the Sentencing Guidelines, like statutory interpretation, is a question of law subject to *de novo* review on appeal").

Janice's position has some allure. Janice probably will never be able to pay the $7 million deficiency ($19 million, with penalties and interest) assessed against her. Assuming Janice is not hiding additional jewelry or property, the only assets that Janice kept from the IRS was the $69,000 worth of jewelry and $8,000 equity in her house. Further, in cases, like this one, involving hidden assets, defining "tax loss" as the amount of tax deficiency could lead to some strange results. For example, if Janice hid only $1000 or $100 worth of jewelry, is she still to be sentenced on the basis of $7 million? Or, if she again falsely fills out a collection information statement hiding another $77,000 worth of assets, will she again be sentenced on the basis of the same $7 million?

Despite these apparent inequities, Janice cannot avoid the plain reading of the relevant Guideline sections. Both sections

2T1.3 and 2T1.1 explicitly define "tax loss" as the amount of tax owed to the government. Section 2T1.3 defines "tax loss" as "28 percent of the amount by which the greater of gross income and taxable income was understated, plus 100 percent of the total amount of any false credits claimed against tax." Section 2T1.1 defines "tax loss" as the greater of "the 'tax loss' defined in 2T1.3" and "the total amount of tax that the taxpayer evaded or attempted to evade." These definitions are unambiguous, and we have found no cases holding that "tax loss" means the amount of money that the IRS could actually recover rather than the amount of tax owed.

Janice was convicted for attempted evasion of taxes for the years 1975 through 1981 and for hiding assets in order to avoid paying those taxes. In calculating the "tax loss," the Guidelines advise the sentencing court that "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." U.S.S.G. § 2T1.1, application note 3; U.S.S.G. § 2T1.3, application note 3. Janice does not dispute, nor could she, that the attempted evasion of taxes for 1975 through 1981 are part of the same course of conduct and therefore the relevant conduct in this case. *See* U.S.S.G. § 1B1.3(a). The taxes for 1975 through 1981 (excluding penalties and interest) that Janice owed and attempted to evade by lying on the collection information statement and hiding assets were the $7 million deficiency assessed as a result of the Stix swindle. The district court correctly found that this $7 million was the "tax loss" for purposes of determining Janice's base offense level under section 2T1.1 and 2T1.3 of the Sentencing Guidelines.

### III. Conclusion

For the forgoing reasons, Janice Brimberry's conviction and sentence are

AFFIRMED.