**Richard MILONE, Petitioner–Appellant,**

v.

**Althea CAMP, Warden, Respondent–Appellee.**

No. 92–3742.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1994.

Decided April 21, 1994.

---

Luis Kutner, John Thomas Moran, Jr. (argued), Chicago, IL, for petitioner-appellant.

Mark L. Rotert, Asst. U.S. Atty., Terence M. Madsen, Asst. Atty. Gen., Margaret O'Connor (argued), Office of the Atty. Gen., Crim. Appeals Div., Chicago, IL, for respondent-appellee.

Before CUMMINGS, BAUER and COFFEY, Circuit Judges.

CUMMINGS, Circuit Judge.

This is an appeal from the denial of a writ of habeas corpus. The Court has jurisdiction over the appeal pursuant to 28 U.S.C. §§ 1291 and 2253. Because petitioner has not demonstrated that any constitutional error infected his state court trial, the dismissal of his petition is affirmed.

### Background

On August 2, 1973, petitioner Richard Milone ("Milone") was convicted at a bench trial in DuPage County, Illinois of the murder of Sally Kandel, a fourteen-year-old girl who had been found dead in a cornfield on September 13, 1972, apparently bludgeoned to death early the previous evening.[1]

■ Milone appealed his conviction to the Illinois Appellate Court, which affirmed. *People v. Milone,* 43 Ill.App.3d 385, 2 Ill.Dec. 63, 356 N.E.2d 1350 (2d Dist.1976). That opinion[2] detailed the evidence presented against him at trial (43 Ill.App.3d at 386–389, 2 Ill.Dec. 63, 356 N.E.2d 1350):

1) *The murder weapon.* A Jewel shopping cart handle, later determined to be the murder weapon, was found near Sally's body on the morning that the murder was discovered. Suspicion focused on the employees of D–C Warehouse in Addison, Illinois when the shopping cart handle was positively matched to one of the carts used to transport inventory there. When Milone, an employee of D–C Warehouse, was first interviewed by detectives he denied knowing when or how the handle was removed from the premises. Confronted by contrary statements from his co-workers, Milone later admitted that he had removed the handle from the cart and carried it in his car for protection, but maintained that he had thrown it away in a park two days before the murder. Testimony from the co-workers at trial confirmed that Milone had been seen with the handle in his car and that he had carried it into a park two days prior to the murder, but they could neither confirm nor deny that he had thrown it away.

2) *Opportunity.* An autopsy of Sally's body revealed that death occurred within two hours of her dinner at 5:15 p.m. on September 12. During his first interview with detectives Milone stated that he left work around 5:30 or 6:00 p.m. the night of the murder; a few days later he said that he had worked until 7:30 or 8:00 p.m. that same evening; another time he said that he had left work for about an hour and a half on September 12 in order to get dinner. One co-worker testified at trial that Milone had left work at around 6:00 p.m. on September 12, and that he had given Milone $5.00 so that Milone could get him a sandwich. He next saw Milone at 7:21. Milone did not have the sandwich. He explained that he had been unable to stop for food because he was busy eluding Addison police who had spotted and chased him because they knew he was driving on a revoked driver's license. At trial Milone stipulated that no such chase had in fact occurred. Another co-worker testified that Milone's car was not in the warehouse lot at 6:00 p.m. the evening of the murder, and that he observed Milone drive up at around 7:20, with combed hair and wearing a different shirt than he had been wearing earlier in the day, looking "cleaned up."

3) *Linda Roseboom's testimony.* Nine-year-old Linda Roseboom testified at trial

---

1. Milone was recently paroled after serving almost 20 years of a sentence of 90 to 175 years in prison.

2. Findings of fact made by a state appellate court are afforded the same presumption of accuracy as findings made by a state trial court. *Lewis v. Huch,* 964 F.2d 670, 671 (7th Cir.1992). In this case the Court must rely on the Illinois Appellate Court opinion because the trial record has been lost.

that she lived next to the cornfield where Sally's body was found. Between 6:00 and 7:00 p.m. on September 12 she observed a light-colored car with front end damage on the driver's side pull into her driveway and turn around. She saw that the driver was a white male with very long sideburns. According to the Illinois Appellate Court opinion, the record showed that on the evening of the murder Milone wore his sideburns quite long and that he drove a beige 1964 Dodge with damage at the front end on the driver's side. When the police examined the car there was no evidence of the crime, but the front seat and the carpet had recently been scrubbed with soap and water.

4) *Bite mark evidence.* Sally's body had been mutilated after her death. In addition to severe head injuries, skull fracture, and laceration of the brain, resulting from the fatal beating, and injuries to the hands—including a traumatic amputation of the left thumb and fractures to several fingers, apparently sustained when Sally attempted to ward off the blows to her head—the autopsy revealed that two lacerations, one in the eyelid of each eye, had been symmetrically carved with a sharp instrument after Sally's death. A human bite mark was also discovered on the inside of Sally's right thigh, inflicted some time after death. Dental impressions were taken of Milone's teeth and mouth, and at trial much evidence was adduced by both sides concerning whether Milone's dentition matched the bite mark.

In his state appeal Milone contended, first, that the dental impressions taken from his mouth pursuant to a search warrant were seized in violation of his constitutional rights, second, that the scientific evidence advanced at trial suggesting that his dentition matched the bite mark found on Sally's thigh was not proven to be sufficiently reliable to permit its admission, and third, that the prosecution had not proven his guilt beyond a reasonable doubt. 43 Ill.App.3d at 386, 2 Ill.Dec. 63, 356 N.E.2d 1350. The court rejected these arguments and affirmed the judgment. The Illinois Supreme Court denied leave to appeal, and no petition for a writ of certiorari to the United States Supreme Court was filed.

In 1986—ten years after his state court appeal—Milone petitioned the federal district court to issue a writ of habeas corpus. That court, through Judge Getzendanner, initially granted the state's motion to dismiss on the ground that Milone had failed to exhaust his state remedies in regard to several of the issues raised in his petition. *United States ex rel. Milone v. Camp,* 643 F.Supp. 679 (N.D.Ill.1986). The court believed that Milone could file an amended petition presenting only exhausted claims to the federal court while simultaneously pursuing his unexhausted claims in state court, without running the risk of being charged with abuse of the writ should he subsequently file a second petition regarding the latter claims. R. 39, interpreting *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

Milone thereupon filed an amended petition raising only the issues he had previously presented to the Illinois Appellate Court. R. 51. The parties then agreed to stay the federal proceedings while Milone pursued, not the state post-conviction relief addressed by the district court in its evaluation of his unexhausted claims, but rather executive clemency. R. 61. Clemency was not granted. R. 104. The district court, however, through Judge Plunkett, next allowed Milone to present all of the claims made in his original habeas petition, unexhausted as well as exhausted, on the ground that intervening Supreme Court doctrine suggested that Milone had made a good case for relaxation of the total exhaustion rule. R. 73, 77. Discovery was allowed; depositions were taken. In September 1992 the district court, through Judge Marovich, granted the state's motion to dismiss the petition. This appeal followed.

■ The district court's conclusions of law are reviewed *de novo. Quinn v. Neal,* 998 F.2d 526, 528 (7th Cir.1993). Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law, not when there has been error under state law. See, *e.g., Brewer v. Aiken,* 935 F.2d 850, 854–855 (7th Cir.1991). State court findings of historical fact are presumed to be correct, 28 U.S.C. § 2254(d), but "questions of law or mixed questions of

law and fact lack that presumption" and are reviewed *de novo*. *Brewer v. Aiken*, 935 F.2d at 855. Of course, the *de novo* standard only applies to questions of federal law, not to purely state-law matters. See, *e.g.*, *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977).

Milone urges the Court to apply a *de novo* standard of review to many of the factual findings described in the Illinois Appellate Court opinion on the ground that his assertions of constitutional error present "mixed questions of law and fact." The force of this reasoning is unclear. This Court will apply a *de novo* standard to Milone's assertions of constitutional error, of course, but it may not revisit Illinois fact-finding absent a showing—which Milone has not made—that error of the type described in 28 U.S.C. § 2254(d) infected the state court proceedings.[3]

### Analysis

Milone's arguments to this Court center around the claim that he is actually innocent of the crime of which he was convicted. This opinion will first address the effect of a claim of actual innocence on habeas corpus review of state proceedings, and then it will discuss the merits of Milone's constitutional arguments.

### A. Actual Innocence

The parties are unclear as to the effect of a claim of actual innocence on habeas proceedings. Milone urges this Court to take such a claim into account as it examines the record for evidence of unconstitutionality in the state court proceedings. That would be impermissible.

A claim of actual innocence is relevant to determining whether a habeas corpus petition may be brought before a federal tribunal at all; it is not ordinarily cognizable in determining whether the writ should issue. Generally, before a federal court will entertain a habeas petition, the petitioner must meet certain procedural requirements. Among these is the requirement that the petitioner has presented to the state courts all of the claims contained in his habeas petition. See generally *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198. While "there is a strong presumption in favor of requiring the prisoner to pursue his available state remedies," under some circumstances federal courts may relax the total exhaustion requirement. *Granberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 1673, 95 L.Ed.2d 119 (1987). One of the circumstances upon which the total exhaustion requirement may be relaxed appears to be a "colorable claim," *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986), by the petitioner that he is actually innocent of the crime for which he was convicted. *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). In this manner a claim of actual innocence provides "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, —— U.S. ——, ——, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993).

Once the petitioner has persuaded the federal court to hear his constitutional claims, his guilt or innocence of the crime is relevant only insofar as it bears on a constitutional issue or a matter of federal statutory law. 28 U.S.C. § 2254(a). The Supreme Court appears to be willing to hold that it is unconstitutional to execute a "legally and factually innocent person," *id.* at ——, 113 S.Ct. at 870 (O'Connor, J., concurring, joined by Kennedy, J.),[4] while at the same time

---

**3.** Milone urges this Court to order the issuance of a writ of habeas corpus but, barring that, he argues that the district court's failure to hold an evidentiary hearing was error. Milone has not demonstrated a defect in state fact-finding such as the ones listed in 28 U.S.C. § 2254(d), nor has he demonstrated that any circumstance discussed in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), overruled in other respects by *Keeney v. Tamayo-Reyes*, —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), is in operation here. It was not error,

therefore, for the district court to refuse to hold an evidentiary hearing.

**4.** See *id.* at ——, 113 S.Ct. at 869 (Rehnquist, C.J., for the Court) (assuming without deciding that a truly persuasive demonstration of actual innocence might render an execution unconstitutional); *id.* at ——, 113 S.Ct. at 870 (O'Connor, J., concurring, joined by Kennedy, J.) (averring that it would be unconstitutional to execute a "legally and factually innocent person"); *id.* at ——, 113 S.Ct. at 875 (White, J., concurring in

suggesting that the petitioner's evidentiary burden in such a case "would necessarily be extraordinarily high." *Id.* at ——, 113 S.Ct. at 869 (Rehnquist, C.J., for the Court). In this case, however, Milone is not under sentence of death; indeed, he has been paroled from prison. Under these circumstances Supreme Court precedent does not allow a federal court to issue a writ of habeas corpus only on the ground that Milone is, or might be, innocent of the Kandel murder.[5] Hence this Court may consider Milone's claim of actual innocence only in determining whether to excuse his failure to exhaust all state court remedies before pursuing this habeas petition.

▮▮▮▮ In order to persuade the federal court to consider constitutional claims that it would otherwise be unable to reach, the petitioner must meet a difficult burden: he must either show both cause for the default and prejudice resulting therefrom, or he must show that failure by the federal court to entertain the defaulted claim would result in a "fundamental miscarriage of justice." *Sawyer v. Whitley*, —— U.S. ——, —— ——, 112 S.Ct. 2514, 2518–2519, 120 L.Ed.2d 269 (1992). If the petitioner is actually innocent of the crime for which he was convicted,

it may be a fundamental miscarriage of justice for the federal court not to entertain his constitutional claims. *Id.* at ——, 112 S.Ct. at 2519. In this case, Milone raises several issues in his habeas petition that were not presented to any state court. He wishes the Court to excuse his failure to exhaust all of his state remedies on the ground that it would constitute a miscarriage of justice, due to his innocence of the murder, not to entertain his petition. In support of his claim of actual innocence Milone makes the following points:

1) The evidence presented at his trial that linked his dentition to the bite mark found on Sally's thigh was unreliable. First, it failed both the *Frye* [*v. United States*, 293 F. 1013 (D.C.Cir.1923) ] and the *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ] tests of admissibility of scientific evidence because the science of "forensic odontology" was in its infancy at the time of his 1973 trial. Second, expert testimony is now available (and is reliable because the science of forensic odontology has advanced considerably in the past 20 years) tending to show that Milone could not have made the mark found on Sally's thigh. Indeed, the mark on Sally's thigh

---

the judgment) (assuming that a persuasive showing of actual innocence would render an execution unconstitutional); *id.* at ——, 113 S.Ct. at 876 (Blackmun, J., dissenting, joined in relevant part by Stevens and Souter, J.J.) (averring that it is unconstitutional to execute a person who is actually innocent). But see *id.* at —— —— ——, 113 S.Ct. at 874–875 (Scalia, J., concurring, joined by Thomas, J.) (suggesting that the Constitution does not forbid the execution of an innocent person).

**5.** In *Townsend v. Sain* Chief Justice Warren noted that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." 372 U.S. 293, 317, 83 S.Ct. 745, 759, overruled in other respects by *Keeney v. Tamayo-Reyes*, —— U.S. ——, 112 S.Ct. 1715. Many federal courts have concluded that innocence alone is not cognizable as a constitutional claim. See, *e.g., Spencer v. Murray*, 5 F.3d 758, 765 (4th Cir.1993), certiorari denied, —— U.S. ——, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); *Ellis v. Collins*, 956 F.2d 76, 78–79 (5th Cir.1992), certiorari denied, —— U.S. ——, 112 S.Ct. 1285, 117 L.Ed.2d 510; *Swindle v. Davis*, 846 F.2d 706, 707 (11th Cir.1988) (per curiam). Some courts,

however, have suggested—apparently on due process grounds—that newly discovered evidence tending to show innocence is grounds for the issuance of the writ if the evidence is so strong that it would probably lead to an acquittal upon retrial. See, *e.g., Jeffries v. Blodgett*, 5 F.3d 1180, 1187–1188 (9th Cir.1993), certiorari denied, —— U.S. ——, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994); *Lewis v. Erickson*, 946 F.2d 1361, 1362 (8th Cir.1991). But see *Swan v. Peterson*, 6 F.3d 1373, 1384 (9th Cir.1993) (the newly discovered evidence must *both* bear on the constitutionality of the petitioner's conviction *and* be so strong that it probably would lead to an acquittal).

We do not believe that the latter position can survive *Herrera v. Collins*, in which Chief Justice Rehnquist stated for the Court, "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief *absent an independent constitutional violation occurring in the underlying state criminal proceeding.* * * * Few rulings would be more disruptive of our federal system than to provide for federal habeas review of free-standing claims of actual innocence." —— U.S. at —— ——, 113 S.Ct. at 860–861 (emphasis added).

can now be shown to match the dentition of a known serial murderer, Richard Macek.

2) Richard Macek confessed to the murder of Sally Kandel several times before committing suicide in his jail cell in 1987. (The parties dispute whether Macek also recanted these confessions.)

3) Linda Sue Roseboom "reaffirmed her trial testimony" that petitioner's Dodge Polara was not the car that she saw in her driveway the evening Sally Kandel was killed. R. 138 at 19.

The parties disagree as to how convincing Milone's case for actual innocence must be in order to persuade a federal court to excuse his failure to exhaust all state remedies before bringing this petition. Milone argues that he need only demonstrate that "under the probative evidence he has a colorable claim of factual innocence," *Kuhlmann*, 477 U.S. at 454, 106 S.Ct. at 2627, quoted in *Sawyer v. Whitley*, —— U.S. ——, ——, 112 S.Ct. 2514, 2519, while the state apparently argues that he must meet a higher burden (Response Br. at 5, relying on *Sawyer v. Whitley*, —— U.S. at ——, 112 S.Ct. at 2517).[6]

The Court need not resolve this dispute. In this case it is more efficient to review all of Milone's constitutional claims, which prove to be without merit, than it is to engage in a long analysis of his factual claims under either standard proposed by the parties. Cf. *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984) (Courts may dispose of a claim of ineffective assistance of counsel on the ground that counsel's performance did not prejudice the defendant, without first inquiring as to whether counsel's performance was deficient.). The remainder of this opinion is premised on the assumption that Milone has made a sufficient showing of actual innocence to warrant habeas review of all of his constitutional claims, unexhausted as well as exhausted.

While considering Milone's constitutional claims this Court may not alter the standards of review discussed above. In particular, while Milone's claim of actual innocence rests

in large part upon evidence that only became available after his trial, such newly discovered evidence may not be imparted wholesale into a habeas analysis. This Court may take Milone's newly discovered evidence into account only insofar as it bears upon his constitutional claims. *Herrera*, —— U.S. at ——, 113 S.Ct. at 860, quoting *Townsend v. Sain*, 372 U.S. at 317, 83 S.Ct. at 759 ("[Newly discovered] evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.").

### B. Constitutional Claims

■ Milone's constitutional claims are as follows:

1) Admission of the bite mark evidence at his 1973 trial violated his right to substantive and procedural due process.

2) There was insufficient evidence at trial to support the conviction.

3) The state failed, in violation of the Fifth, Sixth, and Fourteenth Amendments, to reveal to the defense the existence and details of the so-called "Sally Kandel Reward Fund," the proceeds of which were distributed after trial to several of the prosecution's witnesses.

4) Milone was ineffectively represented when his trial counsel failed to call any character witnesses to testify in mitigation at his sentencing. Additionally, Milone did not knowingly waive his right to allocution, his right to a jury trial, or his right to testify in his own defense.

5) The state's handling of Milone's petition for executive clemency was unconstitutionally deficient.

Milone also argues, first, that he is innocent of the murder of Sally Kandel; second, that Richard Macek committed the murder and that his confessions are probative of Milone's innocence; and third, that Linda Sue Roseboom "reaffirmed her trial testimony" that Milone's car was not the one she had seen in her driveway the night of the murder.

**6.** See *McCoy v. Lockhart*, 969 F.2d 649, 651 (8th Cir.1992), for a discussion of this issue.

The latter points are not a basis for habeas review. As discussed above, assertions of innocence are not in themselves cognizable constitutional claims, at least in cases like this one where the petitioner is not under sentence of death. Likewise, the confessions of Richard Macek are pressed on appeal only as bearing on the question of Milone's innocence and as such this Court may not consider them in conducting habeas review for constitutional error. Finally, as the state notes in regard to the Roseboom testimony, if she testified at trial that Milone's car was not the one she had seen the night of the murder, then the trial judge obviously discounted this evidence.

The remainder of this opinion addresses Milone's assertions of constitutional error.

### 1. The bite mark evidence

 Milone argues that the science of forensic odontology was in its infancy at the time of his trial and that it was therefore error to admit testimony from the state's expert to the effect that his dentition matched the mark found on Sally's thigh. Milone reasons that such testimony fails both the *Frye*[7] and the *Daubert*[8] tests for the admissibility of scientific evidence in federal courts.

 The force of this reasoning is unclear. The admissibility of evidence is generally a matter of state law. See, *e.g.*, *United States* ex rel. *Lee v. Flannigan*, 884 F.2d 945, 953 (7th Cir.1989), certiorari denied, 497 U.S. 1027, 110 S.Ct. 3277, 111 L.Ed.2d 786 (1990). In this case, the Illinois Appellate Court held that the state's expert testimony was admissible. Absent a showing that the admission of the evidence violated a specific constitutional guarantee, a federal court can issue a writ of habeas corpus on the basis of a state court evidentiary ruling only when that ruling violated the defendant's right to due process by denying him a fundamentally fair trial. See, *e.g.*, *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990). The standard, then, is not whether the testimony satisfied the *Frye* or *Daubert* tests—neither of which purports to set a constitutional floor on the admissibility of scientific evidence—but rather is whether the probative value of the state's evidence was so greatly outweighed by its prejudice to Milone that its admission denied him a fundamentally fair trial.[9]

It is clear that the probative value of the odontology evidence presented by the state was not so outweighed by its prejudice to Milone as to deny him a fundamentally fair trial. With respect to its probative value, while the science of forensic odontology might have been in its infancy at the time of trial, as Milone asserts, certainly there is some probative value to comparing an accused's dentition to bite marks found on the victim. With respect to the prejudice to Milone caused by the admission of what he claims was unreliable evidence, he had ample opportunity to persuade the trial judge to discount the testimony of the state's expert: Milone was able to cross-examine the state's expert both in regard to his credentials and in regard to the general reliability of the science of bite mark identification, and Milone presented several experts of his own to testify that he could not have made the mark found on Sally's thigh. Accordingly, it was not constitutional error for Illinois to have allowed the admission of the bite mark evidence.

---

7. *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923).

8. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469.

9. See, *e.g.*, *Flannigan*, 884 F.2d at 953 (applying the "greatly outweighed" balancing test to the admission in state court of prior crimes evidence); *Woodruff v. Lane*, 818 F.2d 1369, 1373 (7th Cir.1987) (same); *United States* ex rel. *Palmer v. DeRobertis*, 738 F.2d 168, 170, 171 (7th Cir.1984) (applying the "greatly outweighed" balancing test to the admission in state court of evidence regarding the defendant's flight from arresting officers), certiorari denied, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 241; cf. *Logan v. Lockhart*, 994 F.2d 1324, 1327 (8th Cir.1993) (asking whether the testimony in state court of a witness who was alleged to have been incompetent to testify was "so grossly unreliable that it infected and fatally undermined the fairness of the trial" (citations and internal quotation marks omitted)), certiorari denied, —— U.S. ——, 114 S.Ct. 722, 126 L.Ed.2d 686.

The only other challenge Milone could make regarding the bite mark evidence is a general challenge to the sufficiency of the evidence to support his conviction.

### 2. Sufficiency of the evidence

■■■■ Due process of law requires that guilt in a criminal proceeding be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). A federal court engaged in collateral review of a state court conviction must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). Of course this inquiry is based on the record evidence. *Id.* at 318, 99 S.Ct. at 2788. In this case to state the standard of review is to dispose of the claim: Mere perusal of the Illinois Appellate Court summary of the evidence adduced against Milone at trial reveals that there was sufficient evidence to support his conviction. He had an opportunity to commit the crime, he was linked to the murder weapon, and evidence was introduced from which a reasonable finder of fact could conclude that Milone was observed near the scene of the murder and that his dentition was linked to the bite mark found on the victim. As Milone himself acknowledges in his brief before this Court (Br. at 20), "issuance of the writ [based on a *Jackson* finding of insufficiency of the evidence] is rare indeed." The evidence presented at Milone's state court trial was sufficient to convict him of murdering Sally Kandel.

### 3. The Sally Kandel Reward Fund

■■■■ According to Milone, before he was indicted for Sally Kandel's murder her family established a "reward fund." The parties do not describe the nature and purpose of the fund, but it appears that after Milone's trial Sally's family distributed the fund's proceeds to several of the witnesses who had testified against him. The persons to whom the proceeds were distributed and the amounts of distribution were determined by Sally's family after the trial. Milone argues that this constitutes "deals, promises or inducements" to material witnesses that the state was obligated to disclose to the defense upon request. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). Its failure to do so, he claims, mandates a new trial.

■■■■ "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383. Milone does not suggest that the state itself established or administered the reward fund, nor does he suggest that the witnesses were promised money by Sally's family in exchange for their testimony. Under these circumstances it cannot be said that there is a reasonable probability—that is, one sufficient to undermine confidence in the outcome, *id.*—that, had the defense been aware of the existence of the fund, the result of the proceeding would have been different.

### 4. Ineffective assistance of counsel and waiver of rights

Milone argues that the assistance of his trial counsel was ineffective in several respects. He also argues that his waiver of allocution, of a trial by jury, and of the right to testify in his own defense, were not knowing and intelligent.

■■■■ In order to demonstrate ineffective assistance of counsel, Milone must show both that his counsel's performance was deficient and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064. The Court need not address both *Strickland* prongs if it is clear that Milone cannot satisfy one of them: There is no need to discuss prejudice if counsel's performance was not deficient, and there is no need to evaluate counsel's perfor-

mance if there was no prejudice resulting from counsel's actions. Cf. *id.* at 697, 104 S.Ct. at 2069. To prove that counsel's performance was deficient the petitioner must show that counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* To prove prejudice the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

Milone raises several issues in support of his claim of ineffective assistance of counsel. Some of these issues implicate constitutional guarantees in addition to the Sixth Amendment right to counsel.

▆▆▆ First, Milone argues that he had twenty-five character witnesses available to testify in mitigation at sentencing, but that his trial counsel inexplicably failed to call them to testify. Because the parties have not suggested that there is any constitutional right to present character witnesses at sentencing, this argument goes only to Milone's ineffective assistance claim. As the district court explained, however, twenty-five people testifying to Milone's good character would not be likely to alter the sentence pronounced by a judge who had just found Milone guilty at a bench trial of a particularly heinous and gruesome murder. For this reason counsel's performance, even if it was deficient, did not prejudice Milone.

▆▆▆ Second, Milone argues that he did not knowingly waive his right to allocution. Because there is no constitutional right to testify at one's own sentencing,[10] this argument also goes only to ineffective assistance of counsel. As the state contends, however, it was a reasonable strategy for counsel to refuse to allow allocution by a defendant who did not admit guilt or offer remorse (Response Br. at 20). For this reason counsel's performance was not deficient.

Milone also argues that, due to his counsel's ineffective performance, his waiver of a jury trial was not knowing and intelligent. Because a trial by jury is a constitutional right (see, *e.g., Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968)), which may be waived by a defendant in favor of a bench trial, *Patton v. United States,* 281 U.S. 276, 298, 50 S.Ct. 253, 258, 74 L.Ed. 854 (1930), only if the waiver is voluntary and knowing, *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970), this argument goes both to Milone's Sixth Amendment right to a jury trial and to ineffective assistance of counsel.

▆▆▆ With respect to whether Milone's waiver was knowing and intelligent, the burden is upon Milone to demonstrate that his waiver of the right to a jury trial was *prima facie* invalid. *United States* ex rel. *Williams v. DeRobertis,* 715 F.2d 1174, 1178 (7th Cir. 1983), certiorari denied, 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984). In this case, petitioner admits that either he or his counsel waived a jury trial. R. 138 at 23. He also acknowledges that his counsel advised him to waive trial by a jury because a jury would have difficulty understanding the expert evidence. *Id.* at 24. Thus petitioner has not made a *prima facie* case that the waiver was invalid. Indeed, it appears that Milone "understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge," *Williams v. DeRobertis,* 715 F.2d at 1180, and that for prudential reasons he elected the latter course. "In addition, the fact that petitioner was represented by competent counsel throughout the proceedings further indicates that he knowingly waived his right." *United*

---

**10.** This proposition follows from *Hill v. United States,* 368 U.S. 424, 426, 428, 82 S.Ct. 468, 470, 471, 7 L.Ed.2d 417 (1962). That case held that failure to allow allocution at federal sentencing, as required by Fed.R.Crim.Proc. 32(a), while reversible error on direct appeal, *Green v. United States,* 365 U.S. 301, 304–305, 81 S.Ct. 653, 655–656, 5 L.Ed.2d 670 (1961), is not a constitutional error that can be raised by collateral attack under 28 U.S.C. § 2254 or § 2255.

*States* ex rel. *Wandick v. Chrans,* 869 F.2d 1084, 1088 (7th Cir.1989). The record indicates that Milone's waiver of the right to a jury trial was knowing and intelligent.

■ With respect to the ineffective assistance claim, counsel's recommendation to waive a jury trial was a reasonable trial strategy. Counsel's stated concern was that the jury would have trouble understanding the expert testimony. Under the circumstances counsel's performance was not unconstitutionally deficient.

■ Finally, Milone notes that he did not testify in his own behalf at trial. This argument goes both to Milone's Fourteenth Amendment right to testify in his own behalf, *Rock v. Arkansas,* 483 U.S. 44, 51, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37 (1987), and to ineffective assistance of counsel.

■ With respect to the Fourteenth Amendment claim, Milone argues that "nowhere in the record is there a suggestion that he knowingly and intelligently waived his constitutional right to testify in his own behalf." R. 138 at 22. The state court had no affirmative duty, however, to determine whether Milone's silence was the result of a knowing and voluntary decision not to testify. *United States v. Brimberry,* 961 F.2d 1286, 1290 (7th Cir.1992). The fact that the record is barren of evidence in this regard, therefore, does not support an inference that Milone's silence was the product of anything other than a knowing and voluntary waiver. Moreover, as in *Brimberry,* Milone does not allege that he "did not know [he] could testify, that [he] wanted to testify, or that [his] attorney prevented [him] from testifying." *Id.* at 1289. He merely asserts that his attorney advised him not to testify in his own behalf and that he took that advice. Milone has not suggested any reason for a federal inquiry into the circumstances of his waiver.

■ With respect to the effectiveness of counsel, because Milone contradicted himself numerous times when he was questioned by investigators prior to his arrest, it was reasonable for counsel to avoid subjecting Milone to damaging impeachment by putting him on the stand. Counsel's performance in this regard was not unconstitutionally deficient.

#### 5. *The clemency hearing*

■ As the district court correctly held, there is no constitutional right to a clemency hearing, *Herrera,* —— U.S. at ——, 113 S.Ct. at 867, and since Milone has not demonstrated any fundamental unfairness in the conduct of this one, there is no ground here for habeas relief.

#### *Conclusion*

The Court is sympathetic to Milone's position: If he is indeed innocent of this heinous crime, nothing is more reasonable than to pursue all avenues of possible relief in an attempt to clear his name. However, we are unable to accept Milone's invitation to engage in a broad inquiry into his guilt or innocence. Our interpretation of applicable Supreme Court precedent and of the policies underlying habeas review precludes such a proceeding. First, *Herrera* strongly suggests that actual innocence is not itself a ground for granting habeas relief in anything other than a capital case, —— U.S. at ——, 113 S.Ct. at 860, thus implicitly overruling federal cases suggesting otherwise. In addition, a contrary rule would gravely undermine legitimate concerns for federalism and finality by arrogating to federal courts, under the guise of a constitutional claim to substantive due process, the fact-finding function that is generally reserved for state processes.

It is difficult to adhere to the policy in a case such as this, where Milone has made a credible claim that newly discovered evidence would not only cast a doubt upon his guilt but in fact would exonerate him. A rule that would allow Milone to demand federal relief on the facts of this case, however, would necessarily require endless litigation of any and all "free-standing claims of actual innocence," *id.* at ——, 113 S.Ct. at 861, no matter how tenuous the foundation, with great detriment to the doctrines regarding proper use of the writ.

Having carefully examined Milone's constitutional claims, it is apparent that no error infected the state court proceedings. The

706

dismissal of Milone's petition for a writ of habeas corpus is affirmed.