**Jimmy Ray PITSONBARGER, Petitioner–Appellant,**

v.

**Richard GRAMLEY, Respondent–Appellee.**

No. 95–3912.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 1, 1997.

Decided April 9, 1998.

Stephen E. Eberhardt (submitted), Chicago, IL, Marshall J. Hartman, Chicago, IL, for Petitioner–Appellant.

Martha E. Gillis, Steven R. Splitt, Office of the Attorney General, Criminal Appeals Division, Chicago, IL, for Respondent–Appellee.

Before CUMMINGS, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

When we last considered Jimmy Ray Pitsonbarger's petition for a writ of habeas corpus, we evaluated it in light of this court's decision in *Lindh v. Murphy,* 96 F.3d 856 (7th Cir. 1996)(*en banc*), in which we had concluded that the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104–132, applied to petitions that were pending on the effective date of that law. The Supreme Court, however, did not agree with our analysis of AEDPA's retroactivity; it held instead that the amendments that AEDPA made to 28 U.S.C. § 2254 do not apply to applications in noncapital cases that were already pending when that Act was passed. *See Lindh v. Murphy,* —— U.S. ——, ——, 117 S.Ct. 2059, 2061, 138 L.Ed.2d 481 (1997). By its order of October 6, 1997 the Supreme Court vacated this court's earlier decision in *Pitsonbarger v. Gramley,* 103 F.3d 1293 (7th Cir. 1996), *reh'g denied,* 103 F.3d at 1306–07 (7th Cir. 1997), and remanded the case to us for reconsideration in light of its *Lindh* decision. *Pitsonbarger v. Gramley,* —— U.S. ——, 118 S.Ct. 37, 139 L.Ed.2d 6 (1997). Seeing no reason in this context to distinguish between capital and noncapital cases in a state which has not implemented the standards specified in 28 U.S.C. § 2261, *cf. Lindh,* at —— – ——, 117 S.Ct. at 2065–67, we have re-evaluated each of Pitsonbarger's claims in light of the law governing habeas petitions prior to the AEDPA. Once again, we conclude that the district court correctly denied his petition.

## I

We assume familiarity with the factual and procedural background of this case as it was described in our earlier opinion. In brief, Pitsonbarger was charged with and tried for murder in two states, Missouri and Illinois, and he was charged with attempted murder and other crimes of violence in Nevada. The present case involves his Illinois prosecution for the murders of Claude and Alta Brown. All three states returned convictions, but only Illinois imposed the death penalty. Under an agreement among the governors of the three states, Pitsonbarger has remained in Illinois, so that the State may carry out the death sentence. He filed various appeals and petitions for post-conviction relief in the Illinois courts, leading up to the present petition under 28 U.S.C. § 2254 for federal habeas relief, which he filed on March 16, 1995. Perhaps the most important claim Pitsonbarger has raised is that his trial counsel was constitutionally ineffective for failing to inform the court that his client was taking the psychotropic drug Librium at the time of trial and sentencing. This failure in turn meant that the state court never held a hearing on his fitness to stand trial. In his petition for habeas relief, and on appeal to this court, Pitsonbarger argued that if the state court had held the hearing, and if the court had made a finding of unfitness to stand trial, and if he had later been found fit for trial with some assistance, Illinois law would have precluded imposition of the death penalty. See 725 ILCS 5/104-10, 5/104-22, 5/104-26(b).

Mindful of the weighty responsibility we bear in reviewing a capital case, we set forth here all eleven of the arguments Pitsonbarger raised in his brief on appeal to this court, so that our reasoning can be clear to all. He presented the following points:

1. It was a denial of due process and equal protection and rights guaranteed by the sixth, eighth, and fourteenth amendments to the U.S. Constitution for the State of Illinois to refuse to return him to the State of Nevada pursuant to the Interstate Agreement on Detainers.

2. His rights under several provisions of the Constitution were violated when he was sentenced by a jury that included members who engaged in private deliberations regarding his case.

3. His constitutional rights were violated when the court improperly excused three prospective jurors for cause and refused to remove a fourth.

4. His constitutional rights were violated when the State used its peremptory challenges to exclude potential jurors who expressed only general objections to the death penalty.

5. His rights under the sixth, eighth, and fourteenth amendments were violated by the State's use of irrelevant and inflammatory evidence at the first stage of the capital sentencing hearing (the eligibility stage), and by the State's comments and introduction of certain evidence at the second stage of the hearing (the penalty stage).

6. He was denied his right to effective assistance of trial counsel, appellate counsel, and postconviction counsel, in violation of the fifth, sixth, eighth, and fourteenth amendments.

7. It violated his rights under the fifth, sixth, eighth, and fourteenth amendments to be represented by court appointed counsel who himself was appointed to serve at the pleasure of the state circuit court's judges.

8. The Illinois Death Penalty statute is unconstitutional because the death penalty may not be imposed on a similarly situated appellant who requires "special assistance" at trial.

9. The jury instructions were constitutionally inadequate because they did not sufficiently inform the jury of its obligation to consider and give effect to all of his mitigating evidence, and because there was no instruction about nonstatutory mitigating factors.

10. The jury instructions and the operation of the Illinois Death Penalty statute are unconstitutional in a variety of ways.

11. The death penalty was excessive in light of the significant mitigating factors he presented.

This is, needless to say, a great number of arguments, evidently presented in the hopes that at least one would attract this court's attention. We understand that counsel in a death penalty case might be inclined to bend over backwards to avoid waiving any potential argument. Nevertheless, selectivity does not cease to be a virtue in such cases; to the contrary, concentration on the best arguments normally permits better development than is possible with a scattershot approach. In any event, here counsel focused our attention at oral argument on the effectiveness of counsel claim as his strongest point. We accordingly give that our greatest attention in this opinion, although we address all of the other arguments as well.

## II

### 1. *Interstate Agreement on Detainers*

■ This argument was properly presented to both the state courts and the court below. Pitsonbarger argued that the Interstate Agreement on Detainers Act (IAD), 730 ILCS 5/3–8–9, required Illinois to return him to Nevada after his Illinois trial, notwithstanding the agreement of the State of Nevada (through its governor) to allow Illinois to keep him. In our earlier opinion, we rejected this claim, pointing out that the agreement of the governors was enforceable and that in any event Pitsonbarger had no legally protectable rights under the IAD in the place where he would serve his sentence. See 103 F.3d at 1300–03. This is a legal argument which we would have reviewed under the AEDPA to see if the state court reached "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1) (West Supp.1997). Our analysis, however, in no way depended upon any deference to the state court's views on the IAD. We have reviewed our earlier reasoning under the de novo standard of review that prevailed prior to the AEDPA, *Lieberman v. Washington,* 128 F.3d 1085, 1091 (7th Cir.1997), and we conclude that we correctly rejected this claim.

### 2. *Private Jury Deliberations*

■ As with the IAD claim, we analyzed this issue in our prior opinion. See 103 F.3d at 1303. The district court found that Pitsonbarger procedurally defaulted this claim by failing to present it to the state courts. This requirement existed before the AEDPA, just as it does under the amended statute. Applying the pre-amendment version of the law, we again conclude that Pitsonbarger procedurally defaulted this argument and that the district court correctly found that he could not raise it.

### 3. *Dismissals for Cause*

■ The trial court dismissed three prospective jurors, Terry Harter, Bernadine Anderson, and Harriet Ottenweller, for cause, because each of them indicated during voir dire that he or she had an aversion to imposing the death penalty. As we noted in our earlier opinion, "a juror in a capital case may be excused for cause if his views about the death penalty would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" 103 F.3d at 1303, quoting *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). We further commented that the trial court's determination of bias is a factual matter entitled to a presumption of correctness under amended § 2254(e)(1). Although we applied the AEDPA's more stringent presumption of correctness for state court fact findings, under which a petitioner may prevail only upon a showing of clear and convincing evidence, the pre-amendment version of § 2254 also treated state court fact findings as presumptively correct. See 28 U.S.C. § 2254(d) (1994). None of the eight exceptions that would allow that presumption to be overcome exists in this case. See § 2254(d)(1)-(8) (1994). We therefore find that under the pre-AEDPA statute, Pitsonbarger's challenges to the trial court's dismissal of these three jurors for cause were properly rejected.

■ We also reiterate our finding that there was no error in rejecting Pitsonbarger's argument that the state court improperly refused to remove juror William Lee for

cause when he allegedly displayed a predisposition in favor of the death penalty. Lee indicated that he would perform his duties with an open mind and that he could be fair to both sides. When the court refused to grant Pitsonbarger's motion to strike Lee for cause, the defense used one of its peremptories to remove him from the panel. As we noted before, a claim about the trial court's failure to dismiss a juror for cause cannot succeed unless the petitioner shows that the jury that actually sat was not impartial. See 103 F.3d at 1304, quoting *Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988). Pitsonbarger made no such showing; thus, as a matter of law under the standards that prevailed prior to the AEDPA, this allegation does not entitle him to relief.

### 4. *The State's Use of Peremptory Challenges*

■ Pitsonbarger argued that the State violated his rights under the fifth, sixth, eighth, and fourteenth amendments to the U.S. Constitution when it used its peremptory challenges to remove prospective jurors who appeared to be opposed to the death penalty. We noted before that there is at present no rule of law prohibiting that practice, as *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), have not been extended that far. See 103 F.3d at 1304. Reviewing this legal point de novo, we again adhere to our prior conclusion. Furthermore, Pitsonbarger procedurally defaulted this claim by failing to raise it before the state court.

### 5. *Evidence and Argument at the Sentencing Hearing*

■ This argument focused on the prosecutor's use of the term "intent" in his closing argument at the end of the first stage of the sentencing hearing. The indictment charged Pitsonbarger with six counts of murder for having acted with the knowledge that his acts created a strong probability of death or great bodily harm (two counts each of first-degree murder, 720 ILCS 5/9–1(a)(2), burglary felony murder, and home invasion felony mur-

der, 720 ILCS 5/9–1(a)(3), for the deaths of his two victims, Alta and Claude Brown). At closing argument, in contrast, the prosecutor argued both intent to kill and knowledge of a strong probability of death or great bodily harm. Pitsonbarger claims that the argument violated his right to due process, because he was not on notice that he would be required to defend against a charge of intentional killing. This claim, like several others, was procedurally defaulted. In any event, the evidence showed that Pitsonbarger put a gun to the heads of his elderly victims and pulled the trigger. Under the circumstances, even if there had been error it was surely not prejudicial.

■ He also argued that the State should not have introduced emotional evidence about the victims at the eligibility stage, including information about their ages and birthdays, testimony from their daughter, life photographs, and evidence that he sexually assaulted one of them. The Illinois Supreme Court deemed this evidence irrelevant to the eligibility phase, but concluded that its introduction was not prejudicial. See *People v. Pitsonbarger,* 142 Ill.2d 353, 154 Ill.Dec. 562, 578–80, 568 N.E.2d 783, 799–801 (1990). In light of *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the question we must now answer without deferring to the state court is whether introduction of this evidence rendered the proceeding fundamentally unfair. *Id.* at 825, 111 S.Ct. at 2608; *Williams v. Chrans,* 945 F.2d 926, 947 (7th Cir.1991). It did not. One of the eligibility criteria under the Illinois Death Penalty Act is the existence of multiple murders. See 720 ILCS 5/9–1(b)(3). The evidence here overwhelmingly indicated that Pitsonbarger met that criterion: the judge had found him guilty of the murders of Claude and Alta Brown. See *Payne,* 501 U.S. at 825, 111 S.Ct. at 2608; *Darden v. Wainwright,* 477 U.S. 168, 181–82, 106 S.Ct. 2464, 2471–72, 91 L.Ed.2d 144 (1986).

■ We are similarly unpersuaded that the State's introduction of evidence during the second stage of the hearing about Pitsonbarger's alleged "window peeping" and public indecency—both uncharged criminal conduct—deprived him of a fair trial. The

due process clause does not require an instruction that the jury must find beyond a reasonable doubt that these events occurred before it can consider them as aggravating factors for capital sentencing. See *Silagy v. Peters,* 905 F.2d 986, 998–1001 (7th Cir.1990). See also *Walton v. Arizona,* 497 U.S. 639, 648, 110 S.Ct. 3047, 3054, 111 L.Ed.2d 511 (1990); *McMillan v. Pennsylvania,* 477 U.S. 79, 85, 106 S.Ct. 2411, 2415–16, 91 L.Ed.2d 67 (1985). The state courts evaluated this evidence and found it reliable, and we have no reason to second-guess that determination.

■ Last, Pitsonbarger objects to two of the prosecutor's comments at the conclusion of the second stage of the sentencing hearing: first, his argument that Pitsonbarger might kill a guard or other inmate if he were sentenced to life in prison, and second, his speculation about what Pitsonbarger might have done to his Nevada victim (who survived her encounter with him) if the Reno police had not intervened. The Illinois Supreme Court rejected these claims because it found that (1) even if the first comment was improper, it did not deprive Pitsonbarger of a fair trial because of the weight of the evidence against him, and (2) the second comment was reasonably based on the evidence introduced at trial. Reviewing these claims *de novo* to see if either comment deprived Pitsonbarger of his federal right to a fair trial, we agree with the conclusions of the Illinois court. The sentencing jury had before it evidence that Pitsonbarger had killed two people in Illinois, moved on to Missouri and killed another man, and then tried to kill a woman in Nevada. The prosecutor's comments, even if improper, would only have led the jury to believe that this was a brutal man not likely to abandon his murderous ways, and the jury had ample independent evidence before it that supported such a conclusion. We find no prejudice in either remark that rises to the level of a due process violation.

*6. Effective Assistance of Counsel*

■ This argument, as we indicated at the outset, was the one counsel implicitly identified at oral argument as Pitsonbarger's most promising. And indeed, the charge

that a defendant was under the influence of psychotropic drugs at or near the time of his trial is a serious one. The Supreme Court of Illinois has rendered a number of decisions spelling out the procedural protections it requires under these circumstances as a matter of state law. See *People v. Birdsall,* 172 Ill.2d 464, 219 Ill.Dec. 22, 670 N.E.2d 700 (1996); *People v. Nitz,* 173 Ill.2d 151, 218 Ill.Dec. 950, 670 N.E.2d 672 (1996); *People v. Brandon,* 162 Ill.2d 450, 205 Ill.Dec. 421, 643 N.E.2d 712 (1994). In its most recent decision in this line, the court appears to have drawn back somewhat from a rule that appeared to require a hearing on incompetence to stand trial based solely on a showing that the defendant had used such drugs. See *People v. Burgess,* 176 Ill.2d 289, 223 Ill.Dec. 624, 629–30, 680 N.E.2d 357, 362–63, *cert. denied sub nom. Burgess v. Illinois,* — U.S. —, 118 S.Ct. 568, — L.Ed.2d — (1997). In any event, the issue for us to decide is not what procedures Illinois has elected to use in these circumstances. It is whether Pitsonbarger's lawyer rendered ineffective assistance of counsel when he failed to inform Dr. Beck, the physician who examined Pitsonbarger for fitness to stand trial, about his client's use of Librium. According to Pitsonbarger, such a disclosure would have set in motion a chain of events that ultimately would have entitled him to the protection of 725 ILCS 5/104–10, 5/104–22, and 5/104–26(b).

We found before, and under the pre-AEDPA standards we find again, that Pitsonbarger failed to raise or develop his claims about Librium use on direct appeal in the state court system. 103 F.3d at 1298–99. He also failed to present a claim of ineffective assistance of counsel based on that issue to the Illinois courts. In the face of that procedural default, Pitsonbarger's present lawyers have tried to show that a miscarriage of justice would result from a failure to hear the claims, as well as cause and prejudice for the default.

Although our original opinion evaluated these claims under the AEDPA, our addendum on rehearing left open the question whether the amended procedural default rule could legitimately be applied to his case.

See 103 F.3d at 1306. We left open the possibility that the change in law went beyond the procedural modifications that our *Lindh* opinion had approved and fell within the rule of non-retroactivity we had announced in *Burris v. Parke*, 95 F.3d 465, 467–69 (7th Cir.1996) (*en banc*). For that reason, we evaluated Pitsonbarger's claim that he was entitled to the "miscarriage of justice" exception to procedural default under the pre-AEDPA law, insofar as the Librium claim might have rendered him "actually innocent of the death penalty." 103 F.3d at 1306–07.

Under *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), procedural default is not excused unless the petitioner can show by "clear and convincing evidence that but for the constitutional error, no reasonable juror would [have found] him eligible for the death penalty." *Id.* at 348, 112 S.Ct. at 2523. There are simply too many links in the chain of reasoning Pitsonbarger offers for us to find that he has met the *Sawyer* burden. Even if we assume that Illinois law would have required a hearing if Dr. Beck had been informed about the Librium use and he or someone else had communicated this to the trial court, we do not know what the outcome of such a hearing would have been. Perhaps, as Pitsonbarger suggests, it would have resulted in a finding of unfitness to stand trial, but other possibilities seem equally plausible. The trial court might have continued the trial for a brief period of time so that he could be re-evaluated without the influence of the psychotropic drug, and then it might have chosen to proceed just as it did. The court might have found that the overall effect of the drug was not enough to render Pitsonbarger unfit to stand trial. Under the circumstances, we conclude that this falls short of the "clear and convincing" evidence required by *Sawyer* to overcome a procedural default under the miscarriage of justice exception.

 The speculative nature of his claim also dooms it under the conventional "cause and prejudice" standard, see *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996), because even if we were to find that ineffectiveness of counsel amounted to ade-

quate cause for the default, he has not established prejudice on this record. Furthermore, Pitsonbarger had several other bites at this apple in the state court system and failed to take them. In particular, he did not raise this point in his state post-conviction hearing, which presented a final opportunity in the Illinois courts to do so. There is no right to effective counsel in postconviction hearings, see *Coleman v. Thompson*, 501 U.S. 722, 756–57, 111 S.Ct. 2546, 2568, 115 L.Ed.2d 640 (1991), which means that it is to no avail that Pitsonbarger argues that his omission at that stage is excused because of counsel's failures.

 We rehearsed Pitsonbarger's other nine allegations of ineffectiveness of counsel in our original opinion. See 103 F.3d at 1299–1300. We have re-evaluated them *de novo*, using the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* requires a petitioner to show that the representation he received fell below the constitutionally acceptable minimum (the "performance" inquiry) and that he was prejudiced by the substandard representation (the "prejudice" inquiry). A failure to show either defective performance or prejudice will doom a claim of ineffectiveness of counsel. *Velarde v. United States*, 972 F.2d 826, 828 (7th Cir.1992). Only Pitsonbarger's claim about the use of irrelevant victim impact evidence at the first stage of the sentencing hearing was properly presented to the Illinois courts, and we have already concluded that this evidence could not have prejudiced him in light of the overwhelming evidence before the jury on Pitsonbarger's eligibility for the death penalty. His ineffectiveness of counsel claim therefore cannot be based on this point. The other claims were all procedurally defaulted. Even under the pre-AEDPA standards for overcoming procedural default, Pitsonbarger's claims fail. He would need to show that his appellate counsel was ineffective for failing to present them on direct appeal, but for the following reasons, he cannot:

 a. Failure to argue that his statements to the police were inadmissible because he

had been denied access to counsel. We have held that this kind of claim, which essentially argues that certain evidence would have been suppressed if counsel had been effective, cannot suffice to show prejudice for habeas purposes. See *Holman v. Page,* 95 F.3d 481, 491–92 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997). Appellate counsel therefore cannot be said to be ineffective for failing to raise the point.

b. Failure to investigate and secure copies of blood alcohol and drug reports that might have shown his statements to the police were involuntary. This claim is not developed with any particularity in Pitsonbarger's brief in this court, and so is waived. See *Kerr v. Farrey,* 95 F.3d 472, 481 (7th Cir.1996); Fed. R.App. P. 28(a)(6). Moreover, even if these reports had shown some level of intoxication from alcohol or drugs, that alone would not defeat a finding of voluntariness. See *United States v. Montgomery,* 14 F.3d 1189, 1195 (7th Cir. 1994), citing *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986). This failure to investigate is not enough to show substandard performance of appellate counsel for *Strickland* purposes.

c. Failure to object to the State's use of peremptory challenges to exclude persons with only a general objection to the death penalty. For the reasons we have already stated, such an objection would not have reflected the current state of the law. While counsel might have argued for an extension of *Batson,* we cannot find that his performance was defective for failing to do so. Appellate counsel also reasonably could have chosen to forgo a point that was not raised in the trial court.

d. Failure to seek the appointment of a second attorney to assist in his representation, as recommended by certain American Bar Association and National Legal Aid & Defender Association guidelines and standards. The key word here is "recommended." Trial counsel cannot be said to be constitutionally ineffective for deciding not to bring in co-counsel, unless there is some reason (not shown on this record) why the first lawyer is unable to provide adequate representation. This means, in turn, that appellate counsel would have had no reason to raise this point on appeal.

e. Failure to present a defense at trial. This argument was not developed at all in Pitsonbarger's brief. We therefore deem it waived. See *Kerr,* 95 F.3d at 481.

f. Failing to object to the prosecutor's improper closing argument. For the reasons we have already described, Pitsonbarger was not prejudiced by this argument; thus, he cannot claim ineffectiveness of counsel because of a failure to object.

g. Failing to object to erroneous instructions on the burden of persuasion at the sentencing hearing. Again, Pitsonbarger was not prejudiced by counsel's failure to object. As we explained earlier, such an exercise would have been to no avail. Furthermore, this argument was not developed in Pitsonbarger's brief, and it is therefore waived. See *Kerr,* 95 F.3d at 481.

h. Failing to attack the constitutionality of the Illinois Death Penalty Act based on the discrimination made possible by its "special assistance" provisions. We discuss this claim on the merits below. It suffices here to say that counsel reasonably could have concluded that such an argument was doomed to failure, given the number of times this court and the Illinois Supreme Court have upheld the Illinois Death Penalty Act after a constitutional challenge. See *Pitsonbarger,* 103 F.3d at 1304 (listing Seventh Circuit cases); *Pitsonbarger,* 154 Ill.Dec. at 586–87, 568 N.E.2d at 806–07 (listing Illinois Supreme Court cases). In addition, counsel reasonably could have believed that the distinction between persons requiring special assistance and others that is drawn by 725 ILCS 5/104–10, 5/104–22, and 5/104–26(b), had a rational basis. It was therefore within the bounds of acceptable performance to forgo this challenge on appeal.

In short, for the reasons indicated, the alleged ineffectiveness of appellate counsel does not excuse Pitsonbarger's failure to raise these points before the Illinois courts on direct appeal. Because there is no right

to effectiveness of counsel in post-conviction hearings, any alleged ineffectiveness of post-conviction counsel is similarly unavailing.

### 7. *Method of Selecting Court–Appointed Counsel*

██ Our discussion of this argument in the earlier opinion in this case did not rely on the stringent AEDPA standard of review. 103 F.3d at 1305. We noted that the argument was procedurally barred; that Pitsonbarger presented no evidence tending to show an actual conflict of interest; and that the law does not entitle him to relief in the absence of such an actual conflict. See *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Nothing in the Supreme Court's *Lindh* decision requires us to change this conclusion.

### 8. *Constitutionality of the Illinois Death Penalty Statute*

██ This claim too is procedurally barred, as we noted before. 103 F.3d at 1306. Even if it were properly before us, our *de novo* review would lead us to the same result. Pitsonbarger is attacking the fact that under 725 ILCS 5/104–10, 5/104–22, and 5/104–26(b), persons needing special assistance at trial (such as an expert to assist a defendant with a communications-related disability) may be found unfit to stand trial. Such persons are not subject to the death penalty, if convicted of a capital offense after a proceeding which could be conducted only if they received some form of special assistance. According to Pitsonbarger, this draws an arbitrary line between persons who need special assistance (not death eligible) and others (death eligible). We cannot agree, however, that such a line is so arbitrary that it violates the deferential standard of review that we must give to state classifications that are not based on a suspect category or that do not affect recognized fundamental rights. Pitsonbarger cannot point to a suspect class that is implicated in this case, and his fundamental right to life is not affected by the special status of the group to which he directs our attention—those incapable of comprehending why they are being singled out for capital punishment, see *Ford v.*

*Wainwright*, 477 U.S. 399, 409–10, 106 S.Ct. 2595, 2601–02, 91 L.Ed.2d 335 (1986); *People v. Young*, 128 Ill.2d 1, 131 Ill.Dec. 86, 104–05, 538 N.E.2d 461, 479–80 (1989). Furthermore, the federal courts owe considerable deference to state legislative judgments in the selection of appropriate standards and classifications of punishment, including capital punishment, see, *e.g.*, *Stanford v. Kentucky*, 492 U.S. 361, 369–74, 109 S.Ct. 2969, 2974–78, 106 L.Ed.2d 306 (1989), and we see no cause for second-guessing Illinois' decision to adopt the sections of 725 ILCS 5/104 at issue here. The Illinois legislature reasonably may have sought to avoid imposing the death penalty on someone whose trial is subject to greater than usual reliability problems. See *Young*, 131 Ill.Dec. 86, 538 N.E.2d at 480. See also *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991–92, 49 L.Ed.2d 944 (1976). In any event, no person actually receives the death penalty without the benefit of the two-stage hearing provided by the state law. We would be reluctant indeed to cast a constitutional shadow on state laws that withdraw from the death-eligible class of defendants those for whom special concerns exist, such as the mentally disabled, 725 ILCS 5/104–26, and minors, 720 ILCS 5/9–1. Yet the same kind of arbitrariness argument that Pitsonbarger has made could be raised in those cases as well. In our view, Illinois has drawn a constitutionally defensible line.

### 9. *Jury Instructions on Mitigating Evidence*

██ Pitsonbarger argued only that the trial court should have given some of his proffered instructions on the jury's right to consider all relevant mitigating factors. But the refusal to give certain instructions is never error, much less constitutional error, unless the instructions actually given as a whole do not accurately reflect the law. *United States v. Waldemer*, 50 F.3d 1379, 1386 (7th Cir.1995), citing *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). See also *Buchanan v. Angelone*, —— U.S. ——, ——, 118 S.Ct. 757, 763, 139 L.Ed.2d 702 (1998) (no eighth amendment requirement to instruct sentencing jury on the "concept of mitigation" or to

**740**

give "instructions on particular statutorily defined mitigating factors"). Pitsonbarger does not discuss the actual charge of the court to the jury, apart from indicating that the trial court gave "the standard instruction" on mitigation—by which we presume he means IPI–Criminal 3d, No. 7C.06 (West 1992). This falls well short of presenting a coherent argument for this court's review, and even further short of meeting the burden of showing more than a mere error in instructions, but a proceeding that denied him a fair trial. *Waldemer*, 50 F.3d at 1386.

### 10. *Jury Instructions and the Constitutionality of the Illinois Death Penalty Statute*

 For this point, Pitsonbarger attempts to incorporate by reference the arguments he presented to the district court. Federal Rule of Appellate Procedure 28(a) specifically prohibits counsel from taking this approach. See *Kerr*, 95 F.3d at 481; *United States v. Patterson*, 23 F.3d 1239, 1246 n. 8 (7th Cir.1994). Part of the appellate process is culling from the trial record those arguments that deserve presentation to the court of appeals and devoting serious thought to them. If incorporation by reference were enough, this process would be seriously compromised.

### 11. *Excessiveness of the Death Penalty*

Last, Pitsonbarger urges us to find that the death penalty was excessive in light of the mitigating evidence he presented. We cannot, however, simply second-guess the jury's verdict on this point, any more than we would be entitled to second-guess a jury's verdict otherwise. Even a prisoner on death row may not raise sufficiency of the evidence arguments on habeas review that are properly for the state courts on direct appeal. We have upheld the constitutionality of the Illinois Death Penalty statute, as we have already noted in this opinion. See, *e.g., Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1388–89 (7th Cir.1994) (*en banc*). Pitsonbarger has presented no legal ground for upsetting the jury's verdict here, at this late stage, on federal habeas review.

In his Circuit Rule 54 Statement, Pitsonbarger renews his earlier suggestion that this court stay his habeas appeal pending the outcome of his pursuit of post-conviction relief in state appellate court. While we reject Pitsonbarger's suggestion (his only new rationale is a vague observation that "[m]atters are now proceeding along in the Circuit Court of Peoria County"), we emphasize again that our decision today has no impact on the state court's discretion to accept or reject the state law claims he is presenting in his second petition for post-conviction relief. See 103 F.3d at 1306. Any petition for federal habeas corpus following this round of state court proceedings will be subject to the requirements of 28 U.S.C. § 2244(b).

We therefore once again AFFIRM the judgment of the district court denying Pitsonbarger's petition for a writ of habeas corpus.