**UNITED STATES of America, ex rel. Losardo LUCAS, Petitioner,**

v.

**George WELBORN,[1] Warden, Respondent.**

**No. 97 C 3158.**

United States District Court, N.D. Illinois, Eastern Division

Oct. 5, 1999.

---

1. Pursuant to Federal Rule of Civil Procedure 17(a), Warden George Welborn has been substituted for Jack Hartwig as Respondent in this case, because Petitioner Lucas is presently incarcerated at Tamms Correctional Center and is therefore in Welborn's custody.

Benjamin Earl Starks, Starks & Boyd, P.C., Chicago, IL, Thomas M. Peters, Chicago, IL, for Petitioner.

Losardo Lucas, Tamms, IL, pro se.

Lisa Anne Hoffman, William Lloyd Browers, Illinois Attorney General's Office, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

On June 3, 1986, habeas petitioner Losardo Lucas was convicted of murder by a jury in the Circuit Court of Cook County and was sentenced to 35 years in prison. Lucas appealed his conviction and sentence to the Illinois Appellate Court, claiming that he was not proven guilty beyond a reasonable doubt, that the trial court erred in limiting his cross-examination of a crucial State witness, and that his 35-year sentence was excessive. The Appellate Court affirmed both his conviction and sentence, and Lucas did not file a petition for leave to appeal the decision to the Illinois Supreme Court.

On December 30, 1993, Lucas filed a petition for post-conviction relief in the Circuit Court of Cook County, alleging

that certain witnesses testified falsely at his trial. Attached to the petition were three affidavits, two from State witnesses stating that their testimony at Lucas's trial had not been truthful, and one from another person who was not called as a witness but whose statement conflicts in part with that of one of the witnesses who testified for the State. In 1996, the court dismissed Lucas's post-conviction petition as untimely filed. The Illinois Appellate Court affirmed the dismissal for untimeliness, and again Lucas declined to seek review by the Illinois Supreme Court.

Lucas petitioned this court for a writ of habeas corpus in April 1997. His second amended petition (filed in November 1998) raises the following six grounds for relief: (1) judicial bias, because his trial was presided over by Judge Thomas Maloney, who was later convicted for judicial misconduct and who opposed an aldermanic candidate politically associated with Lucas's father; (2) judicial misconduct by Judge Maloney as Lucas's trial; (3) prosecutorial misconduct in the form of references to Lucas's gang affiliation and the use of perjured testimony; (4) violation of Lucas's right to a public trial based on Judge Maloney's exclusion of certain observers from the courtroom during the trial; (5) ineffective assistance of trial counsel for failing to interview and call two crucial witnesses; and (6) ineffective assistance of appellate counsel for failing to raise significant issues on appeal.

▪ Before we may review the merits of his habeas petition, Lucas must both: "(1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default." *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir.1996) (citations omitted). These requirements ensure that Illinois will have the first chance to review and correct any alleged violations of its prisoners' federal constitutional rights. *See McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir.1997). Lucas will be deemed to have "exhausted" his state court remedies if he has given the highest court in the state "a fair opportunity to consider the constitutional issue" presented, or if he has "no further available means for pursuing review of his conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir.1985). Both parties agree that no avenues remain open for Lucas to present claims attacking his conviction in state court, so we conclude that he has exhausted his state remedies and turn now to the issue of procedural default.

▪ Procedural default occurs either when a petitioner fails to present a federal constitutional issue fairly to the state courts on direct or post-conviction review, *see Lemons v. O'Sullivan*, 54 F.3d 357, 360 (7th Cir.1995), or when a state court rejects a claim on an independent and adequate state law ground. *See Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir.1996). Lucas did not present any of the claims he makes in his habeas petition to the state courts for their review, so he is procedurally barred from raising them here unless he can "excuse" his default by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or ... that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). To establish "cause" for default of a claim, Lucas must show "that some objective factor external to the defense impeded counsel" from presenting the claim to the state courts. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

▪ Lucas first contends that Judge Maloney was biased against him both because Lucas did not bribe Judge Maloney (he argues that "[t]o cover up his bribe taking, Maloney acted like a ruthless pro-prosecution judge in all non-bribed cases") and because Lucas's father, a precinct captain in the First Ward, campaigned on behalf of an aldermanic candidate who ran against one of Judge Maloney's close associates. Certainly Lucas has cause for failing to raise this claim—at least the bribe-

taking component of it—in his direct appeal, since it is based on new information that was not available at the time of Lucas's direct appeal. However, Judge Maloney was convicted on April 16, 1993, so Lucas could have raised the bias and corruption issue in his December 30, 1993 petition for post-conviction relief; because he did not bring this issue to the attention of the state court at that time but could have, the claim is procedurally defaulted. *See Lemons*, 54 F.3d at 361; *Farrell v. Lane*, 939 F.2d 409, 411 (7th Cir.1991). Lucas says that he told the lawyer representing him in his post-conviction proceedings to raise the judicial bias claim, but that the lawyer did not. He proceeds to list the things his post-conviction counsel did wrong, ultimately charging that the lawyer was "negligent and ineffective." But Lucas cannot rely on this argument to establish cause for his default because he "had no constitutional right to counsel when mounting his collateral attack on his conviction." *Morrison v. Duckworth*, 898 F.2d 1298, 1300–01 (7th Cir.1990) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)); *see also Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir.1998).

▮ The question "whether attorney error absent a right to effective assistance of counsel can ever be an external impediment constituting cause for a procedural default," *Morrison*, 898 F.2d at 1301, is not critical to our disposition because even if Lucas could rely on the errors of his post-conviction counsel to show "cause" for not raising his bias claim in state court, he has not shown "actual prejudice" as a result of the alleged corruption. Lucas has the burden of explaining "not merely that the [alleged] errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 494, 106 S.Ct. 2639. And the Seventh Circuit has pointed out that

> [the fact] that a judge who takes bribes to acquit defendants in some cases may have an incentive in others to throw the book at the defendant in order to avoid charges of being soft on criminals is not proof that he was not impartial in the criminal cases in which he was not bribed. It is merely a suspicious circumstance that warrants further inquiry.

*Cartalino v. Washington*, 122 F.3d 8, 10 (7th Cir.1997) (citing *Bracy v. Gramley*, 520 U.S. 899, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997)); *see also U.S. ex rel. Dower v. O'Sullivan*, No. 98 C 2415, 1999 WL 98340, at *4 (N.D.Ill. Feb.19, 1999) ("Bracy did not signal any notion that all of the numerous convictions over which Maloney had presided during his 13–year tenure on the Circuit Court have become vulnerable to federal habeas attack—on the contrary, that case involved some direct linkages between Maloney's proved corruption and the circumstances of Bracy's murder trial and death sentence.") The petitioners in both *Bracy* and *Cartalino* relied not only on Judge Maloney's conviction for bribe-taking in other cases, but made "specific allegations" in support of their claims that Maloney was actually biased in their cases, pointing to enough additional evidence to establish "good cause" for discovery or an evidentiary hearing. Lucas, on the other hand, makes only conclusory assertions (claiming that at his trial Maloney disparaged the defense's evidence and theories and displayed hostility toward Lucas and his attorney that "was apparent to everyone in the courtroom, particularly the jurors"), which, without more, will not suffice to meet Lucas's burden of proving actual judicial bias in his case, and "a mere appearance of bias, of partiality, is not enough" to get an evidentiary hearing. *Cartalino*, 122 F.3d at 11 (citing *Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1372 (7th Cir.1994) (en banc)). We are thus unable to excuse Lucas's procedural default and cannot consider the merits of his judicial bias claim.

▮ Lucas also failed to present to the state courts his claim that Judge Ma-

loney engaged in judicial misconduct at Lucas's trial by intervening on behalf of the prosecutor, thus bolstering the case against Lucas.[2] Lucas could have made these allegations on direct appeal or in his post-conviction proceedings, since at those stages he knew what had transpired at trial and he had access to the trial transcripts to which he refers in his habeas petition. Lucas does not demonstrate that an "objective factor external to the defense" constitutes cause excusing his failure to raise this claim in the state courts, so we will not consider it here. *Carrier*, 477 U.S. at 488, 106 S.Ct. 2639.

Lucas's third claim is that the prosecutors engaged in misconduct at his trial both by introducing highly prejudicial evidence of his gang affiliation without establishing its relevance or laying a proper foundation and by knowingly using perjured testimony against him. Lucas defaulted the first part of this claim, by failing to raise it before the state courts in his direct appeal or post-conviction petition. And although ineffective assistance of counsel may be considered cause for a procedural default, *see Carrier*, 477 U.S. at 488, 106 S.Ct. 2639, Lucas may not rely on this argument to establish cause here because he never presented any ineffective assistance of counsel claims to the state courts for their review when he had a chance, in his post-conviction petition. *See Momient–El v. DeTella*, 118 F.3d 535, 541–42 (7th Cir.1997) (claim of ineffectiveness of appellate counsel not raised first in state post-conviction petition cannot be relied upon as cause to excuse procedural default at federal habeas stage).

As for the second part of the claim, although we could arguably construe Lucas's post-conviction petition as having put the state court on notice that the prosecutors used perjured testimony against him at the trial—since the post-conviction petition alleges that certain witnesses testified falsely at the trial and attached to it

were affidavits from two of the witnesses alleged to have lied under oath—the claim is still procedurally defaulted. The trial court's dismissal of Lucas's post-conviction petition as untimely filed, affirmed by the Illinois Appellate Court's finding that Lucas had not provided sufficient evidence that his delay in filing the petition was not due to his own culpable negligence, *see People v. Lucas*, No. 1–95–0204, at 4 (Ill. App.Ct. July 30, 1996), constitutes an independent and adequate state procedural ground supporting the dismissal, on which the state court "clearly and expressly" relied in dismissing the petition. *See Coleman*, 501 U.S. at 735, 111 S.Ct. 2546. For this reason we cannot consider Lucas's claim in this Court unless he can show cause for the untimely filing and prejudice resulting therefrom. *See id.* at 750, 111 S.Ct. 2546. While Lucas offers no grounds for cause, he repeatedly mentions the ineffectiveness of his post-conviction counsel, so we suspect that he also blames that attorney for the procedural default of claim three. But because there is no constitutional right to counsel in collateral post-conviction proceedings, *see, e.g., Morrison*, 898 F.2d at 1301, we cannot excuse Lucas's failure to file a timely post-conviction petition as the result of ineffective post-conviction counsel.

Lucas's fourth claim is that his right to a public trial was violated when Judge Maloney excluded members of the public from the courtroom during Lucas's trial based upon Maloney's belief that the observers were Lucas's friends who were affiliated with a gang and whose presence intimidated the State's witnesses. Lucas offers no cause for failing to present this claim to the State courts for review either on direct appeal or in his post-conviction proceedings, so we cannot consider it here.

Lucas's claim of ineffective assistance of trial counsel was not raised in his direct appeal, which is not surprising

2. Lucas claims that Maloney asked the prosecution's witnesses 42 questions, 37 of which resulted in answers that hurt Lucas's case, and that Maloney overruled 42 of defense counsel's 60 objections while only overruling 20 of the prosecution's 49 objections.

given that Lucas was represented by the same attorney at his trial and on appeal. In these situations, we excuse the failure to raise ineffectiveness claims on direct appeal. *See Barnhill v. Flannigan,* 42 F.3d 1074, 1077–78 (7th Cir.1994) (where trial counsel is also appellate counsel, petitioner is not barred from raising ineffective assistance of counsel for the first time in a collateral attack). But Lucas had another opportunity to raise the issue, with new counsel, in his post-conviction proceedings, and because he did not, he waived the right to raise the issue in federal court. *See Farrell,* 939 F.2d at 411. Similarly, Lucas should have raised his claim of ineffective *appellate* counsel in his post-conviction petition, as such claims are considered procedurally defaulted for federal habeas purposes if they are not first brought to the attention of the state courts in a petition for post-conviction relief. *See Lemons,* 54 F.3d at 360. Lucas insists that his counsel at the post-conviction stage could have and should have argued that Lucas's trial and appellate attorney was ineffective, but this does not excuse his default since—as we observed earlier—there is no constitutional right to counsel at the post-conviction stage. *See Morrison,* 898 F.2d at 1301.

 Lucas argues that enforcing the default of his claims would result in a "fundamental miscarriage of justice," but this "narrow" exception is limited to "extraordinary" cases where the petitioner is actually innocent, and not merely legally innocent, of the crime of conviction. *See Steward v. Gilmore,* 80 F.3d 1205, 1212 (7th Cir.1996); *Lemons,* 54 F.3d at 361 n. 3 (citing *Carrier,* 477 U.S. at 496, 106 S.Ct. 2639). To fall within this exception, Lucas must "support his allegations of constitutional error with new reliable evidence that was not presented at trial," and he must show "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *See Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

 Lucas does not point to sufficient evidence of his actual innocence to invoke the fundamental miscarriage of justice exception. First, Lucas presents the affidavits of two witnesses—Brandon Howard and Erskine Howard—who state that they did not testify truthfully at Lucas's trial, but he does not provide us with any information in support of the reliability and trustworthiness of the recantations, failing to explain how the affidavits were obtained and whether the witnesses came forward to recant on their own or only after being contacted by Lucas or his attorneys. Second, the credibility of Brandon Howard's recanting affidavit—which is not even signed—is further undermined by Brandon's rebuttal testimony at trial, during which he explained that Lucas's sister tried on two occasions to convince him to change his testimony and say that he had lied to the police, but that he told her that he would not change his testimony because he had not lied and the police did not force him to make the statement he made. And another part of Brandon's testimony—about a fight he witnessed between Lucas and the victim in 1984 in which Lucas made a statement that could be construed as a threat to kill the victim—was corroborated by further witness testimony. Overall, we do not find Brandon Howard's recanting affidavit to be the sort of trustworthy and reliable evidence required in order to avoid procedural default by a claim of actual innocence.

Moreover, Lucas has not shown that it is more likely than not that no reasonable juror would have convicted him in light of the Brandon and Erskine Howard recantations. Even without the testimony of the Howard brothers, there was sufficient evidence presented at the trial on which the jury could have based its finding of guilt, such as the testimony of Belinda Moffett that Lucas confessed to her and showed her the gun that he used to commit the murder, the testimony of two police detectives who took statements implicating Lucas following the shooting, and the testimony of a clinic doctor—corroborated by

the clinic's records—stating that Lucas was not seen or treated there on the day of the shooting and thus impeaching Lucas's testimony and part of his alibi. At best, Lucas's evidence shows that it would be possible for a juror to find him not guilty, not that it would be impossible for any reasonable juror to find him guilty, so we cannot excuse his procedural default on fundamental miscarriage of justice grounds.

Lucas also presents the affidavit of Diane Cunningham, in which she states that she did not see or talk to Lucas on the day of the shooting and thus casts doubt on the trial testimony of her niece, Belinda Moffett, who testified for the State saying that she was at Cunningham's apartment and heard gunshots, after which Lucas knocked on the door and Belinda refused to let him in. Lucas does not explain the circumstances underlying Cunningham's affidavit, nor does the affidavit indicate that Cunningham would have testified at Lucas's trial had she been contacted by his attorneys at the time. Even if Cunningham had testified, however, the jury still could have chosen to believe Belinda over Cunningham. And Cunningham's affidavit merely indicates that she did not see or talk to Lucas that day; it does not say that Lucas did not knock on the door of her apartment or that Belinda never answered Cunningham's door. Even if it did say so, it would discredit only a minor portion of Belinda's testimony, as Belinda also recalled seeing Lucas in the building lobby later that day and then speaking to him privately, at which point he told her that he killed the victim and showed her the gun that he used. Again, while Lucas's evidence shows that it would be *possible* for a juror to find him not guilty, he does not demonstrate that it would be *impossible* for any reasonable juror to find him guilty, and for this reason we cannot apply the fundamental miscarriage of justice exception to procedural default in this case.

Because Lucas has failed to meet the procedural requirements for federal habeas review, we are precluded from considering the merits of his § 2254 petition. We therefore deny Lucas's petition for writ of habeas corpus. It is so ordered.