**UNITED STATES of America ex rel. Tim TAYLOR, Petitioner,**

v.

**Paul BARNETT, Respondent.**

**No. 98 C 1512.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 9, 2000.

---

**914**

Tim Taylor, Galesburg, IL, pro se.

Chief of Criminal Appeals, Illinois Attorney General's Office, Chicago, IL, for Respondent.

### *MEMORANDUM OPINION AND ORDER*

GETTLEMAN, District Judge.

Petitioner Tim Taylor ("Taylor") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the petition is denied.

### BACKGROUND

The following facts are drawn from the opinion of the Illinois Appellate Court. *People v. Taylor,* 238 Ill.App.3d 1111, 212 Ill.Dec. 97, 656 N.E.2d 250 (1992).[1] On the

---

1. Under 28 U.S.C. § 2254(e)(1), in the absence of a showing by the petitioner of clear and convincing evidence to the contrary, a determination of a factual issue by a state court is presumed to be correct for the purposes of habeas review. *See, e.g., Abrams v. Barnett,* 121 F.3d 1036, 1038 (7th Cir.1997).

morning of November 29, 1986, the body of Allen Nuccio ("Nuccio") was found in the back of a tow truck in a vacant lot on South Emerald Avenue in Chicago. Seven .22 caliber bullets were eventually recovered from Nuccio's body, but the lack of blood in the towtruck suggested to police that he had been killed elsewhere. Nuccio had been living across the street from the vacant lot in an apartment that he shared with Edward Howard ("Howard"), located above the Fifth Wheel Tavern. Both the Fifth Wheel and the apartment were owned by Donald Barnett ("Barnett"). Petitioner Taylor lived next door to Howard and Barnett. Taylor and Howard both frequented the Fifth Wheel, and were known as runners or janitors for Barnett.

In 1988, Taylor, Howard, and Barnett were charged with Nuccio's murder. Each was tried separately in the Circuit Court of Cook County. Christine Robbins ("Robbins") testified at trial that she knew the victim and all three defendants from the Fifth Wheel, which she frequented regularly. Howard had introduced Nuccio to Robbins as "T.J." She said that two days before the body was found, she heard Howard tell Barnett, "I think that boy's a cop," indicating Nuccio. Later on, Robbins attended a party along with the defendants at which Nuccio handed Taylor $1000 to purchase cocaine. After everyone at the party had used the cocaine, Robbins heard Barnett say that he thought Nuccio was a cop. She also saw that at one point during the party, in the midst of some confusion, Howard surreptitiously pocketed Nuccio's cocaine. The next morning, she heard Nuccio and Howard arguing, and heard Nuccio say to Howard, "You're selling my dope."

Robbins returned to the bar in the early hours of November 29 and saw the three defendants walk into Barnett's office and shut the door. Taylor emerged first. As Barnett left the office, he passed Howard a white and silver pearl-handled .22 caliber handgun which Robbins recognized as a gun Taylor had asked her to hide for him

once during a drug bust. Robbins went out with friends and later returned to the building that housed the Fifth Wheel. As she entered the building she heard a loud bang like an M-80 firecracker. As she walked up the stairs she heard Taylor and his girlfriend arguing and then saw them run down the front stairs of the building. Later that day, back at the Fifth Wheel, Robbins heard Howard say, "I killed T.J. I did it. You did it. We all did it." At that juncture, Barnett walked over to Howard, grabbed him by the neck, and said, "Shut up m-fer, before we're all in trouble." In April 1988, Robbins first told the police what she had seen and heard in the days leading up to Nuccio's murder.

Alice Robbins Parlitch ("Gidget"), Robbins's sister, likewise testified against Taylor and his codefendants. According to Gidget, at around 2 a.m. on November 29, she met Sean Dwyer ("Dwyer"), and the two of them walked to the Fifth Wheel and attended the party in the upstairs apartment. Taylor, Howard, and Nuccio were in the front room. Soon after Gidget and Dwyer entered the kitchen and began using marijuana and cocaine, respectively, Gidget heard a "big boom" from the front room. She saw Taylor kick the door down, walk toward Nuccio, and shoot at Nuccio approximately three to four times. Gidget stated that although Howard and Barnett saw Taylor shooting, they did not attempt to help Nuccio. Instead, Barnett called Nuccio a cop and a "snitch." Upon witnessing this scene, Gidget and Dwyer ran for the front door, where Howard stopped them and threatened to kill them and their families if they told anyone about what they had just seen. As Gidget ran outside, she heard moaning coming from the alley and saw Howard and a man she could not identify beating a moaning Nuccio. There, she saw Howard pull out a small gun and shoot Nuccio five or six times.

Dwyer's eyewitness testimony was similar though not identical to Gidget's. Dwyer was a friend of the codefendants

who regularly purchased cocaine from Barnett and Taylor. In the days leading up to the murder, both Barnett and Taylor told Dwyer that they thought Nuccio was a cop. As Dwyer was cutting cocaine in the kitchen at the party, Taylor walked back into the party (he had come and gone several times) and began shooting at Nuccio. Dwyer heard about six to eight shots. Soon thereafter, Howard pushed Dwyer into the other room and told him not to worry about what had just happened. At that point, Barnett handed Dwyer some cocaine and then turned to Nuccio and said, "Shut the fuck up, you cop." According to Dwyer, he arrived back at his father's house around 3:15 a.m. on November 29.

According to police testimony at trial, Taylor was taken to the police station for questioning on May 27, 1988. While there, he recounted a number of different versions of the events of November 29, 1986. At one point he stated that he saw Howard firing a handgun at Nuccio and, as he ran back to his apartment, heard a sound like a body being thrown from the third floor to the second floor landing. He also stated that two days before the killing, Barnett had told him that Nuccio was a "narc" and that they would have to get rid of him.

Taylor was convicted of murder following the 1988 jury trial and was sentenced to a term of 50 years imprisonment. (Howard and Barnett were also convicted and sentenced to extensive prison terms.) Taylor appealed his conviction and sentence to the Illinois Appellate Court. On appeal, Taylor argued that: (1) the state had failed to prove him guilty of murder beyond a reasonable doubt; (2) the trial court had committed reversible error by admitting a .38 caliber gun into evidence that was not connected to the murder, admitting evidence of Taylor's drug activities, and admitting hearsay statements under the coconspirator exception to the hearsay rule although the state had not established a prima facie case of conspiracy; and (3) he was deprived of his Sixth

Amendment right to effective assistance of counsel when his trial attorney waived closing argument. After considering Taylor's arguments on appeal, the Illinois Appellate Court affirmed Taylor's conviction in an order dated December 21, 1992. Taylor's petition for leave to appeal to the Illinois Supreme Court was denied on March 3, 1993.

On September 30, 1996, Taylor filed a pro se post-conviction petition. In his post-conviction petition, Taylor argued that: (1) newly discovered evidence suggested that Dwyer's testimony was a fabrication; (2) the trial court committed reversible error by admitting Robbins's testimony that some time before the murder, Taylor had asked her to hide weapons and drugs during a drug bust; (3) the trial court committed reversible error by admitting Robbins's testimony that at one point she saw Nuccio give Taylor a large amount of money to purchase drugs; (4) the trial court committed reversible error by admitting into evidence a .38 caliber handgun and by admitting Howard's arrest for unlawful possession of said gun; (5) the trial court committed reversible error by admitting Dwyer's hearsay statements under the coconspirator exception to the hearsay rule although the state had not established a prima facie case of conspiracy; (6) the trial court committed reversible error by admitting Robbins's testimony that she observed Howard steal cocaine from Nuccio; (7) he was denied effective assistance of counsel at the appellate level in violation of his Fifth, Sixth, and Fourteenth Amendment rights; (8) he was denied effective assistance of counsel at trial because his lawyer: (a) failed to properly interview prosecution witnesses; (b) failed to conduct sufficient investigation; (c) failed to file pretrial motions to suppress testimony and evidence; (d) failed to proffer expert testimony; (e) failed to call witnesses or present a defense; (f) failed to make a closing argument; and (g) failed to object to the testimony of Joanne Nuccio, the victim's wife;

(9) his Fourteenth Amendment right to due process was violated because the prosecution failed to prove him guilty beyond a reasonable doubt; (10) the trial court committed reversible error by improperly admitting the victim impact testimony of Joanne Nuccio without proper instructions; and (11) the prosecution suborned perjury [2] in violation of his Sixth Amendment rights.

The Circuit Court dismissed the post-conviction petition and Taylor appealed this decision. On October 10, 1997, the Illinois Appellate Court affirmed Taylor's conviction and sentence in a written opinion, finding that Taylor's entire petition was untimely and that various of his claims were separately procedurally barred or were without merit. *People v. Taylor*, 291 Ill.App.3d 1123, 240 Ill.Dec. 286, 716 N.E.2d 880 (1997) 1–97–0371 & 1–97–0946 (consolidated). Taylor filed a petition for leave to appeal to the Illinois Supreme Court, which was denied on February 2, 1998.

### DISCUSSION

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard of review applied to federal habeas corpus petitions filed under 28 U.S.C. § 2254 by persons in state custody. To the extent that petitioner's claims are not procedurally barred or otherwise unreviewable, the standard of review described below applies to their analysis.

Any claim adjudicated by a state court on the merits is governed by 28 U.S.C. § 2254(d), under which habeas relief may be awarded only where the state court's adjudication of a petitioner's claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The first phrase of § 2254(d)(1)—authorizing habeas relief when the state court's decision is "contrary to" clearly established federal law as determined by the Supreme Court—pertains only to questions of law. *Lindh v. Murphy*, 96 F.3d 856, 868 (7th Cir.1996) (en banc), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).[3] Thus, federal courts are "free to express an independent opinion on all [constitutional] legal issues in the case." *Lindh*, 96 F.3d at 868–69.

The second phrase of § 2254(d)(1)—authorizing habeas relief when the state court's decision "involved an unreasonable application" of clearly established federal law as determined by the Supreme Court—pertains to mixed questions of law and fact. *Id.* at 870. This phrase "tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called 'unreasonable.'" *Id.* A state court's application of Supreme Court precedent is reasonable if it is "at least minimally consistent with the facts and circumstances of the case." *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir.1997), *cert. denied*, 522 U.S. 819, 118 S.Ct. 72, 139 L.Ed.2d 32 (1997). "[W]hen the constitutional question is a matter of degree, rather than concrete entitlements, a ... responsible, thoughtful answer reached after

---

**2.** Respondent repeatedly and erroneously describes this count as *"subordination* of perjury."

**3.** The Supreme Court reversed the Court of Appeals' en banc opinion in *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996), as to the retroactive application of the 1996 amendments to pending noncapital cases. The *Lindh* court's interpretation of the 1996 amendments, how-

ever, remains authoritative. *See Holman v. Gilmore*, 126 F.3d 876, 880 (7th Cir.1997) ("[t]he grant of certiorari in *Lindh* excluded ... most ... elements of the opinion ... so our treatment remains authoritative in this circuit"), *cert. denied sub nom. Holman v. Page*, 522 U.S. 1150, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998).

a full opportunity to litigate is adequate to support [a state court's] judgment." *Lindh,* 96 F.3d at 871. Thus, "[t]he statutory 'unreasonableness' standard allows the state court's conclusion to stand if it is one of several equally plausible outcomes." *Hall v. Washington,* 106 F.3d 742, 748 (7th Cir.1997), *cert. denied,* 522 U.S. 907, 118 S.Ct. 264, 139 L.Ed.2d 190 (1997). In other words, if a state court asks the "legally correct question [such as] whether the trial judge abused his discretion" . . . [then] the "fact-specific answer cannot be called 'unreasonable' even if it is wrong . . . ." *Lindh,* 96 F.3d at 876–77.

## II. Analysis of the Claims Presented

Taylor raises the following claims in his habeas corpus petition. In Claim 1, Taylor claims that he received ineffective assistance of counsel at trial because his lawyer: (a) failed to properly interview prosecution witnesses; (b) failed to file pretrial motions to suppress testimony and evidence; (c) failed to proffer expert testimony; (d) failed to call witnesses or present a defense; and (e) failed to make a closing argument. In Claim 2, Taylor contends that newly discovered evidence suggests that Dwyer lied on the stand. In Claim 3, Taylor claims that his Fifth, Eighth, and Fourteenth Amendment rights were violated when the court improperly admitted hearsay testimony, including: (a) Robbins's testimony that some time before the murder, Taylor had asked her to hide a gun that resembled the murder weapon during a drug bust; (b) Robbins's testimony that at one point she saw Nuccio give Taylor a large amount of money to purchase drugs; (c) Robbins's testimony that she saw Howard steal cocaine from Nuccio; and (d) Robbins's testimony that she heard Barnett state that Nuccio was a cop. (Taylor argues that this last statement was improperly admitted under the coconspirator exception to the hearsay rule). In Claim 4, Taylor alleges that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated when the trial court admitted the victim impact testimony of

Joanne Nuccio, the victim's wife. In Claim 5, Taylor contends that he was deprived of his Fourteenth Amendment right to due process because the prosecution failed to prove him guilty beyond a reasonable doubt. In Claim 6, Taylor claims that the prosecution suborned perjury. And in Claim 7, Taylor asserts that his sentence was excessive and violated his right to due process, equal protection, fair and impartial treatment, and fundamental fairness, under the Fourth, Fifth, Eighth, and Fourteenth Amendments.

### A. Exhaustion of Remedies and Procedural Default

In order for this court to reach the merits of his claims, Taylor must clear two procedural hurdles: exhaustion of remedies and procedural default. *See Rodriguez v. Peters,* 63 F.3d 546, 555 (7th Cir.1995). The exhaustion requirement demands that a petitioner take his claims to the state courts first, if the state courts "have not yet had a full and fair opportunity to consider the petitioner's constitutional claims and remain open to address [his] claims . . . ." *See Cawley v. DeTella,* 71 F.3d 691, 693 (7th Cir.1995). If a petition contains an unexhausted claim, the court must dismiss the entire petition without addressing the merits of any claim, even if the petition contains other exhausted claims. *See Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir.1997); *Wickstrom v. Schardt,* 798 F.2d 268, 269 (7th Cir.1986). Taylor has exhausted his state court remedies because no further avenues of relief remain open to him in the state court. *See Cawley,* 71 F.3d at 693.

Procedural default may occur in one of two ways: (1) when a petitioner fails to raise an issue on direct appeal or post-conviction review properly, *see Rodriguez,* 63 F.3d at 555; or (2) when the state court rests its judgment on an adequate and independent finding of procedural default under state law. *See Patrasso v. Nelson,* 121 F.3d 297, 301 (7th Cir.1997). If a petitioner has procedurally defaulted with respect to a habeas petition claim, a

federal court cannot reach the merits of that claim unless the petitioner demonstrates: (1) cause for and prejudice from failing to raise the claim earlier; or (2) that the default would lead to a "fundamental miscarriage of justice." *Steward v. Gilmore,* 80 F.3d 1205, 1211–12 (7th Cir. 1996) (quoting *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).

### 1. Adequate and Independent Finding of Procedural Default

■■■ Respondent filed an answer arguing that many of Taylor's claims are procedurally defaulted because the Illinois Appellate Court deemed his post-conviction petition untimely under 725 ILCS 5/122–1. "As a general rule, federal district courts may not reach the merits of a habeas petition challenging a state conviction if the 'state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds.'" *Barksdale v. Lane,* 957 F.2d 379, 382 (7th Cir.) (quoting *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)), *cert. denied sub nom Barksdale v. Peters,* 506 U.S. 890, 113 S.Ct. 257, 121 L.Ed.2d 189 (1992). If the last state court rendering a judgment in a case "clearly and expressly" stated that it was resting its opinion on a state procedural bar, this procedural default at the state level bars consideration of a federal claim on habeas review. *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). As this court recently explained, "even if the appellate court reached the merits of the federal claim in an alternate holding, procedural default 'curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invoke[d] a state procedural bar rule as a separate basis for decision.'" *United States ex rel. Weston v. Clark,* 101 F.Supp.2d 685, 689

(N.D.Ill. 2000) (quoting Harris, 489 U.S. at 264 n. 10, 109 S.Ct. 1038). If a state court does not reach a federal issue because of a state procedural bar, that issue is procedurally defaulted and cannot be raised in a writ of habeas corpus to a federal court without a showing of cause and prejudice. *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

■■■ The appellate court's order affirming the dismissal of Taylor's post-conviction petition is the last judgment entered in Taylor's case. In that opinion, the appellate court stated, "Defendant's petition, filed more than six years after his conviction and three years after the supreme court denied his petition for leave to appeal, was clearly untimely and therefore subject to dismissal on that basis." The appellate court then explained that although the trial court had dismissed Taylor's post-conviction petition on the merits, it was sustaining this dismissal on the grounds that the petition was untimely. The appellate court continued by stating that it would not excuse Taylor's untimely filing because several of the claims in his post-conviction petition were either procedurally barred on other grounds or without merit, and proceeded to briefly discuss those claims. Although the appellate court addressed the merits of some of the claims in Taylor's habeas petition, it also clearly and expressly stated that its judgment rested on a state procedural bar, namely, the untimely nature of Taylor's petition. Accordingly, the federal claims Taylor raised in his post-conviction petition are procedurally defaulted. Specifically, Claim 1, Claim 2, Claim 3(a), Claim 3(b), Claim 3(c), Claim 4, Claim 6, and Claim 7 of Taylor's habeas petition are procedurally defaulted.[4]

### 2. Failure to Raise Claims on Direct Appeal

■■■ Even if Taylor's post-conviction petition had not been dismissed as untime-

---

4. Respondent neglects to mention Claim 4 in its answer. Perusal of Taylor's post-conviction petition, however, demonstrates that in

that document, he raised the claim that the admission of Joanne Nuccio's testimony violated his federal rights to due process and a

ly, certain of the claims in his habeas petition are procedurally defaulted on other grounds. As respondent argues, Taylor failed to raise a number of his claims on direct appeal. "Failure to raise all claims during the course of the state court proceedings bars consideration of those claims not raised." *Rodriguez*, 63 F.3d at 555. Three of Taylor's claims relating to ineffective assistance of trial counsel, Claims 1(a), 1(b), and 1(c), are procedurally defaulted under this standard. Three of Taylor's claims relating to improper admission of hearsay evidence, Claims 3(a), 3(b), and 3(c), are likewise procedurally defaulted because he did not raise these claims on appeal.

### 3. Cause and Prejudice

■ This court can reach Taylor's procedurally defaulted claims only if he makes a showing of cause and prejudice, or demonstrates that declining to review his claims would result in a fundamental miscarriage of justice. Taylor may demonstrate cause by showing that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Taylor eloquently and passionately argues in his response to respondent's answer that he has not procedurally defaulted on those claims raised in the post-conviction petition, and that if he has, this court should excuse his procedural default.

### a. Failure to Timely File Post-Conviction Petition

■ Taylor contends that he diligently attempted to comply with the Illinois Post-

Conviction Statute. He argues that under 725 ILCS 5/122–1, the post-conviction petition must be timely filed "unless petitioner can show that delay was not due to his culpable negligence." Taylor notes that he presented various documents during the state post-conviction proceedings to demonstrate that the delay was not his fault. In deeming Taylor's petition untimely filed and holding that it was subject to dismissal on that basis, however, the state appellate court implicitly rejected Taylor's argument that the timing requirement should be tolled. "Whether a petition alleges sufficient facts to show a lack of culpable negligence is a question involving the interpretation and application of state law." *Barksdale*, 957 F.2d at 383. This court does not have the authority to reconsider or reverse the state appellate court's legal conclusion. Moreover, Illinois courts apply the statutory timing requirements of § 5/122–1 strictly, and have "failed to produce even a single published opinion in which the court found a lack of culpable negligence." *Harris v. DeRobertis*, 932 F.2d 619, 622 (7th Cir.1991).

■ Perhaps, however, Taylor is essentially claiming that "the state court's refusal to hear him on the issue of culpable negligence was so arbitrary that it cannot be the basis of procedural default." *Barksdale*, 957 F.2d at 384 (citing *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir.1990)). Under that theory, this court may independently consider the evidence that Taylor attached to his post-conviction petition, which included Taylor's affidavit and the affidavit of his codefendant, Howard. Taylor attests that he was unable to acquire the trial transcripts from the attorney who had represented him on appeal

---

fair trial. Because the appellate court deemed the post-conviction petition untimely, Claim 4 of Taylor's habeas petition is procedurally defaulted. The appellate court's ruling that Taylor's challenges to the sufficiency of the evidence were procedurally barred under the doctrines of res judicata and waiver

provides a separate basis for finding Claim 4 procedurally defaulted. *Aliwoli v. Gilmore*, 127 F.3d 632, 634 (7th Cir.1997) ("If a claim is found to be waived by an Illinois appellate court, that constitutes an independent and adequate state ground and we will not entertain that claim.").

until 1994, after the deadline to timely file had passed. Even accepting this evidence as true, it does not excuse Taylor's late filing. *See, e.g., People v. Diefenbaugh,* 40 Ill.2d 73, 237 N.E.2d 512, 514 (1968) ("the lack of a transcript does not excuse a defendant from filing his petition for post-conviction relief within the statutory time limit"). In addition, Taylor's attestations do not explain why Taylor waited two more years after he acquired the transcripts before filing his post-conviction petition.

Taylor also attests that during 1996 he was placed in Menard Correctional Center, where he came across his codefendant, Howard. Both Taylor and Howard attest in affidavits attached to Taylor's post-conviction petition that it was Howard who provided Taylor with the newly discovered evidence upon which one claim in his post-conviction petition is based. Again, this testimony does not explain why Taylor waited an additional two years after receiving his trial transcripts to file a post-conviction petition that included eleven claims, only two of which appear to depend on the alleged newly discovered evidence. Given the unexplained, additional two-year time lag, it was not arbitrary for the state court to refuse to hear testimony on the issue of culpable negligence.

▆▆▆▆ Alternatively, Taylor may be attempting to argue that the same affidavits he presented to support his post-conviction petition provide "cause" for his untimely filing and thus excuse his procedural default. By alleging that his attorney's failures prevented him from timely filing his own post-conviction petition, Taylor is raising a disguised ineffective assistance of counsel claim. It is well-settled that alleged ineffective assistance of counsel cannot constitute cause for failing to raise an issue in a post-conviction proceeding because there is no constitutional right to assistance of counsel at that point. *See Pitsonbarger v. Gramley,* 141 F.3d 728, 737 (7th Cir.), *cert. denied,* 525 U.S. 984, 119 S.Ct. 448, 142 L.Ed.2d

402 (1998); *Jenkins v. Gramley,* 8 F.3d 505, 508 (7th Cir.1993). Similarly, alleged ineffective assistance of counsel cannot constitute cause for filing a post-conviction petition many years after the statutory deadline.

#### b. Failure to Raise Claims on Direct Appeal

In response to respondent's argument that certain claims in his habeas petition are procedurally defaulted because he failed to raise them on direct appeal, Taylor argues that he received ineffective assistance of appellate counsel. As an initial matter, Taylor does not raise a claim of ineffective assistance of appellate counsel in his habeas petition, but raises that claim before this court for the first time in his response brief. Even if Taylor had included a claim for ineffective assistance of appellate counsel in his habeas petition, that claim would be procedurally defaulted, because it was raised in Taylor's post-conviction petition and was deemed time-barred by the state appellate court. Because Taylor's ineffective assistance of appellate counsel claim was not raised in the instant petition and would be procedurally defaulted had it been so raised, this claim does not constitute cause for Taylor's failure to properly raise his other claims to the appellate court.

#### 4. Fundamental Miscarriage of Justice

▆▆▆▆ Because Taylor is unable to show cause for his failure to file a timely post-conviction petition or to raise claims on direct appeal, the court must determine whether refusing to reach the merits of his habeas petition would work a fundamental injustice. See Howard v. O'Sullivan, 185 F.3d 721, 726 (7th Cir.1999). To prevail under the fundamental miscarriage of justice standard with respect to either claim, Mitchell must demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d

808 (1995). This standard "requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329, 115 S.Ct. 851.

 The court has reviewed the documents Taylor identifies as newly discovered evidence. These include a summary of an interview Howard's attorneys conducted with Dwyer on or about July 9, 1992. Taylor argues that the interview summary demonstrates that Dwyer lied during his testimony. According to the summary, Dwyer explained to the attorneys interviewing him the circumstances surrounding a signed statement he had given the police, a statement that is not identified in the interview.[5] He told his interviewer that the police had come to him about five years earlier and had told him that if he did not cooperate, he would be put in jail with Taylor, Barnett, and Howard. Dwyer stated that he was scared not to cooperate and say what the police wanted him to say in his statement. This evidence does not demonstrate that Dwyer lied in the testimony presented at Taylor's trial. The interview summary simply suggests that Dwyer was pressured into giving a statement. Such pressure, standing alone, does not render a statement unreliable, let alone demonstrate that it is a fabrication.

The second piece of "newly discovered evidence" Taylor presents is a letter, purportedly from Dwyer to the sister of one of Taylor's codefendants. Taylor contends that in the letter, Dwyer admitted to lying and stated that other witnesses had lied as well. The letter is virtually illegible. The court discerns the words, "what is false and what is true," and the words, "I believe I can [illegible] testify that certain witnesses were lying an could prove it if I

knew what they said." Additionally, it appears that Dwyer was asking his correspondent to send him something (transcripts perhaps?).

As an initial matter, there is nothing to suggest that Dwyer was discussing Taylor's trial; he may well have been referring to the trial of the codefendant with whose sister he was corresponding. Even assuming that the subject of the letter was Taylor's trial, Dwyer does not state in the letter that he himself lied in the course of the trial. Although he states that he believes certain witnesses were lying, he does not identify those witnesses. The final item Taylor terms newly discovered evidence is a document that he says suggests that the .38 caliber handgun introduced at his trial in 1990 was ordered destroyed in 1988.

None of the newly discovered evidence Taylor presents proves or even suggests that he is actually innocent. The court cannot conclude that, had these three rather cryptic pieces of evidence somehow made their way before the jury, no reasonable juror would have convicted Taylor. The eyewitness testimony against Taylor was powerful. Even if the alleged "newly discovered evidence" had discredited Dwyer, Gidget's testimony placed Taylor at the scene of the murder, shooting a gun at Nuccio. The court concludes that Taylor has not carried the heavy burden of proving that refusing to consider the merits of his defaulted claims would work a fundamental miscarriage of justice.

**B. Merits**

Respondent concedes that certain of Taylor's claims are not procedurally defaulted. During his direct appeal, Taylor raised Claim 1(d), his argument that counsel failed to make a closing argument, Claim 3(d), his contention that the trial court improperly admitted hearsay testimony under the coconspirator exception to

---

5. It is not clear from the appellate court's opinion whether Dwyer testified in person at

Taylor's trial or whether his testimony was read into the record.

the hearsay rule, and Claim 5. In its answer, respondent addresses these three claims on the merits.[6]

## 1. Ineffective Assistance of Trial Counsel (Claim 1(d))

■■■■■ Taylor argues that his trial counsel was ineffective in a number of ways, but, as discussed above, the court can reach the merits only of Taylor's claim that his attorney waived closing argument. A claim of ineffective assistance is a mixed question of law and fact, *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), meaning this court's review of the state court decision is de novo. *Hall v. Washington*, 106 F.3d 742, 748 (7th Cir.1997). Under the AEDPA, however, "the court must answer the more subtle question of whether the state court 'unreasonably' applied clearly established federal law as the Supreme Court has determined it." *Id.* The word unreasonable in this context "is stronger than 'erroneous' and maybe stronger than 'clearly erroneous.'" *Hennon*, 109 F.3d at 334 (citing *Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993)). Accordingly, "the fact that we might disagree with the state court's determination . . .—might think the determination incorrect—would not carry the day for [Taylor]." *Id.*

The "clearly established federal law" that Taylor asserts the state court unreasonably applied is set forth in the Supreme Court's opinion in *Strickland*. *See Berry v. Gramley*, 74 F.Supp.2d 808, 814 (N.D.Ill.1999). To succeed in his claim of ineffective assistance of counsel, Taylor must demonstrate both that defense counsel's conduct fell below an objective standard of reasonableness, and that a reasonable probability exists that, but for counsel's substandard performance, the

decision reached would have been different. *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052. With respect to the first element, Taylor "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" and must establish that counsel's conduct was "outside the wide range of professionally competent assistance." *Id.* at 689, 690, 104 S.Ct. 2052. With respect to the second element—prejudice—"a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case," but only that there is a "reasonable probability that . . . the result of the proceeding would have been different." *Id.* at 693–94, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S.Ct. 2052. Taylor must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. 2052.

■■■■ The appellate court concluded that defense counsel's failure to make a closing argument did not fall below an objective standard of reasonableness. The court found that counsel's waiver of the closing argument was a decision of trial tactics because it denied the prosecution the opportunity for rebuttal. This is not an unreasonable application of the *Strickland* doctrine. *See, e.g., Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir.2000) ("[I]t is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel."); *see also United States v. Natanel*, 938 F.2d 302, 310 (1st Cir.1991) (holding that defense counsel's waiver of closing argument constituted a strategic decision); *United States v. Nersesian*, 824 F.2d 1294, 1321 (2nd Cir.1987) (holding that defense

---

6. Claim 1(d) appears to be procedurally defaulted because it was included in Taylor's post-conviction petition and was deemed untimely by the appellate court. Because respondent responds to Claim 1(d) on the merits, however, the court will address this claim on the merits as well.

counsel's waiver of opening argument constituted a strategic decision).

█ The appellate court also concluded that defense counsel had presented an adequate defense because he had raised a pretrial motion to suppress, conducted lengthy cross-examinations of prosecution witnesses, and presented and argued two post-trial motions. The appellate court was correct that under *Strickland* and its progeny, isolated instances of alleged incompetence do not establish ineffective assistance of counsel. *See, e.g., Dahler v. United States,* 143 F.3d 1084, 1086 (7th Cir.1998) ("it is essential to examine the attorney's entire work product; an isolated slip-up in an otherwise competent representation does not violate the sixth amendment."). Even according to the appellate court's rendition of the facts, however, defense counsel presented a skeletal defense. He read to the jury the testimony of Thomas Bentley, who in a prior proceeding had implicated Howard but not Taylor in the shooting. He then read Dwyer's grand jury testimony, who stated that he'd left Howard's apartment between 4 and 4:30 a.m., and that the Fifth Wheel was closed at that time. Defense counsel then rested, and after the prosecutor's closing argument, he waived his own closing argument.

Although the court may not agree with the state appellate court's determination that defense counsel's overall performance necessarily cured his failure to make a closing argument, the court cannot conclude that the state court's conclusion was not minimally consistent with the facts and circumstances of the case, or was an unreasonable application of the first prong of *Strickland* to those facts.

█ Moreover, "failure to make a closing argument is not ineffective assistance per se; there must be a reasonable probability that the omission affected the outcome." *Nutall v. Greer,* 764 F.2d 462, 466 (7th Cir.1985). The state appellate court did not unreasonably apply the second

prong of *Strickland* to the facts in concluding that Taylor had not demonstrated that he was prejudiced by defense counsel's failure to make a closing argument. "[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052. Given that the evidence of Taylor's guilt was quite strong—after all, two eyewitnesses testified that they had seen Taylor shoot the victim—it was not an unreasonable application of the law to hold that the outcome of the trial would not have been different had trial counsel presented a closing argument.

## 2. Improper Admission of Hearsay Testimony (Claim 3(d))

In Claim 3(d), Taylor argues that the court improperly admitted hearsay statements made by Robbins, in violation of his Fifth, Eighth, and Fourteenth Amendment rights. Specifically, Taylor contends that the court should not have admitted under the coconspirator exception to the hearsay rule Robbins's testimony that she heard Barnett say that he thought that Nuccio, the victim, was a cop. When Taylor raised this point on direct appeal, he argued that Robbins's testimony should not have been admitted because the state had not laid a proper foundation to invoke the coconspirator exception to the hearsay rule.

█ "Unless [a] petitioner demonstrates that a specific constitutional right has been violated, a federal court can issue a writ of habeas corpus only when a state evidentiary ruling violates the defendant's due process rights by denying him a fundamentally fair trial." *Haas v. Abrahamson,* 910 F.2d 384, 389 (7th Cir.1990). Accordingly, state evidentiary rulings "rarely serve as a proper basis for granting a writ for habeas corpus." *Id.* The Supreme Court has held that admitting hearsay statements under the coconspirator exception does not violate the confrontation clause of the Sixth Amendment. *Bourjai-*

*ly v. United States,* 483 U.S. 171, 181–82, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

 The standard for determining whether the state court committed constitutional error in admitting certain evidence is "whether the probative value of the state's evidence was so greatly outweighed by its prejudice to [petitioner] that its admission denied him a fundamentally fair trial." *Milone v. Camp,* 22 F.3d 693, 702 (7th Cir.1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 720, 130 L.Ed.2d 626 (1995). Moreover, in a habeas proceeding a trial error will be deemed harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal citations and quotation marks omitted); *see also Jamerson v. Washington,* 81 F.3d 163, 1996 WL 149349, at *1 (7th Cir. March 27, 1996) (unpublished opinion).

 Even if the trial court erroneously admitted Robbins' testimony, Taylor's claim fails because any error was harmless. Barnett's statement that he thought Nuccio was a cop did not have a substantial and injurious effect in determining the verdict or "change[ ] the result of the trial." *United States ex rel. Shaw v. De Robertis,* 755 F.2d 1279, 1282 (7th Cir. 1985). The evidence of Taylor's guilt was quite strong. Accordingly, it was not constitutional error for the trial court to admit Robbins' testimony.

### 3. Failure to Prove Guilt Beyond a Reasonable Doubt (Claim 5)

In Claim 5, Taylor contends that he was convicted in violation of his Fourteenth Amendment right to due process because the prosecution failed to prove him guilty of Nuccio's murder beyond a reasonable doubt. The court must apply the second clause of § 2254(d)(1) to determine if the appellate court unreasonably applied the Supreme Court's standard for judging the sufficiency of the evidence in rejecting Taylor's reasonable doubt claim.

 "A federal court engaged in collateral review of a state court conviction must determine 'whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Milone,* 22 F.3d at 703 (quoting *Jackson v. Commonwealth of Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The appellate court rested its decision on *People v. Young,* 128 Ill.2d 1, 131 Ill.Dec. 86, 538 N.E.2d 461 (1989), an Illinois Supreme Court case that relies on *Jackson. Young* held that inconsistencies in testimony go to the weight of the evidence and the credibility of the witnesses, questions that are within the province of the jury. *Id.* 131 Ill.Dec. 86, 538 N.E.2d at 474. Under *Young,* the appellate court will not substitute its judgment for the jury's unless the evidence presented at trial was "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

 The appellate court in the instant case determined after a thorough discussion that despite the inconsistencies in Robbins's and Dwyer's testimony, the disputed evidence was not so unreasonable, improbable, or unsatisfactory as to require reversal of the jury's guilty verdict. The appellate court noted that the one-and-a-half year gap between the shooting and the trial explained certain inconsistencies, and that the two eyewitnesses' testimony about the shooting itself was remarkably consistent. The appellate court's application of the rule articulated in *Jackson* to the facts of the instant case was not unreasonable, and was "at least minimally consistent with the facts and circumstance of the case." *Hennon,* 109 F.3d at 335.

### CONCLUSION

For the foregoing reasons, Taylor's petition for habeas corpus is denied.